# EXHIBIT B

## DEPOSIT ESCROW AGREEMENT

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (this "Agreement") is dated as of_____, 2009, by and among UNA VEZ MAS HOUSTON, LLC, a Delaware limited liability company ("Buyer"), Frank Higney, in his capacity as the Bankruptcy Court-approved Limited Purpose Fiduciary (the "LPF"), on behalf of JOHNSON BROADCASTING, INC., a Michigan corporation ("JBI"), and JOHNSON BROADCASTING OF DALLAS, INC., a Texas corporation (("JBDI") and collectively with JBI, "Seller"), and JPMORGAN CHASE BANK, N.A., a national banking association (the "Escrow Agent"). Buyer and Seller are sometimes referred to herein, collectively, as the "Interested Parties." Capitalized terms used and not defined in this Agreement shall have the respective meanings ascribed thereto in the Purchase Agreement (as defined below).

**WHEREAS,** on October 13, 2008, JBI and JBDI filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (as now in effect or hereafter amended, the "Bankruptcy Code");

**WHEREAS,** on February 26, 2009, the LPF was appointed as a limited purpose fiduciary by the Bankruptcy Court pursuant to the LPF Order, which describes, among other things, the role of the LPF and provides the LPF authority to sell the Station Assets;

**WHEREAS,** on October ___, 2009, the Interested Parties have entered into an Asset Purchase Agreement (the "Purchase Agreement"), pursuant to which, subject in particular to the entry by the Bankruptcy Court of the Sale Approval Order, Buyer will acquire the Station Assets;

**WHEREAS,** pursuant to the Purchase Agreement, upon the entry of the Bidding Procedures Order and the DIP Loan Order, Buyer desires to deposit $1,000,000 (the "Buyer's Deposit") into an account established and maintained by the Escrow Agent, the amount so deposited to be held and distributed by the Escrow Agent on the terms and subject to the conditions set forth herein; and

**WHEREAS,** the Interested Parties wish to engage the Escrow Agent to act, and the Escrow Agent is willing to act, as Escrow Agent hereunder and, in that capacity, to hold, administer and distribute the Escrow Property (as defined below) in accordance with, and subject to, the terms of this Agreement.

**NOW, THEREFORE,** for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Deposit of Funds.

(a)      The Interested Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

(b)      No later than 5:00 p.m. (Houston/Dallas, Texas time) on _____, 2009 Buyer shall deposit with the Escrow Agent the Buyer's Deposit into the Escrow Account (as

80647839.1

defined below), in accordance with the Purchase Agreement. The Buyer's Deposit, and any interest, income and earnings thereon, is referred to herein as the "Escrow Property."

(c)      The Escrow Agent agrees to hold the Escrow Property in an account established with the Escrow Agent (the "Escrow Account") and to administer the Escrow Property in accordance with the terms of this Agreement. The Escrow Agent shall hold the Escrow Property and shall not disburse the Escrow Property except as provided herein.

2.      Release of Escrow Property. The Escrow Agent shall release the Buyer's Deposit to Seller or to Buyer, as the case may be, upon receipt of:

(a)      Joint Written Instructions. Joint written instructions regarding the release of the Buyer's Deposit executed by Buyer and Seller, in which case the Escrow Agent shall release the Escrow Property in accordance with such written instructions; or

(b)      Court Direction. Upon receipt by the Escrow Agent of a certified written instruction, order or judgment (which shall have become final and nonappealable) entered by a court of competent jurisdiction, directing the Escrow Agent to release the Escrow Property (or a portion thereof), which shall be accompanied by a letter or other written evidence from the law firm of the prevailing party certifying the finality of the order, in which case the Escrow Agent shall release the Escrow Property (or a portion thereof) as directed by such written instruction, order or judgment.

(c)      No Other Disbursements. The Escrow Agent shall disburse the Escrow Property only in accordance with this Section 2. Upon delivery of the Escrow Property by the Escrow Agent, this Escrow Agreement shall terminate, subject to the provisions of Section 8.

3.      Fees Payable to the Escrow Agent. The Escrow Agent shall deduct from the amount of any release of the Buyer's Deposit (a) the portion of the fees payable by the Buyer to the Escrow Agent pursuant to Section 8, if such release is made for the benefit of Buyer or (b) the entire amount of the fees payable by the Interested Parties to the Escrow Agent pursuant to Section 8, if such release is made for the benefit of Seller.

4.      Investment of Funds. During the term of this Agreement, the Escrow Property shall be invested solely in a JPMorgan Chase Bank, N.A. Money Market Deposit Account ("MMDA"). The rate of return on an MMDA varies from time to time based upon current market conditions. The Escrow Agent is hereby authorized to execute purchases and sales of authorized investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Interested Parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Escrow Property or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Agreement. The Escrow Agent shall not be responsible for any loss suffered from any investment, including, without limitation, any market loss on any investment liquidated prior to maturity in order to make a payment required hereunder, except any loss resulting from its gross negligence or willful misconduct or failure to invest the Escrow Property in accordance with this Section 4.

80647839.1

2

All earnings received from the investment of the Escrow Property shall be credited to, and shall become a part of, the Escrow Account (and any losses on such investments shall be debited to the Escrow Account). The Escrow Agent shall be responsible for reporting any such earnings to the Internal Revenue Service.

5.     <u>Interest, Income and Earnings on the Buyer's Deposit</u>. Any interest, income or other amounts earned on the Buyer's Deposit (the "<u>Escrow Interest</u>") shall be payable to Buyer exclusively, whether or not said interest, income and earnings have been distributed to Buyer. Therefore, notwithstanding anything to the contrary in this Agreement, the Escrow Interest shall not be incorporated into the Buyer's Deposit and shall under no circumstances be paid or released by the Escrow Agent to Seller.

6.     <u>Certification of Taxpayer Identification Number and Withholding</u>.

(a)     Each of the Interested Parties has provided the Escrow Agent with its certified tax identification number by signing and returning a Form W-9 (or Form W-8, if applicable) to the Escrow Agent. The Interested Parties understand that, in the event their tax identification numbers are not certified to the Escrow Agent, the Internal Revenue Code of 1986, as amended from time to time, or other applicable revenue-related laws promulgated by the applicable governmental authority may require withholding of a portion of any interest or other income earned on the investment of the Escrow Property.

(b)     The Escrow Agent shall deduct and withhold from the consideration otherwise payable pursuant to this Agreement to Buyer or Seller, as applicable, such amounts as the Escrow Agent is required to deduct and withhold with respect to the making of such payment under any provision of federal, state, local or foreign tax law.

(c)     All interest or other income earned under the Agreement shall be allocated to the Buyer and reported, as and to the extent required by law, by the Escrow Agent to the Internal Revenue Service (the "<u>IRS</u>"), or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow by the Buyer whether or not said income has been distributed during such year. Any other tax returns required to be filed will be prepared and filed by the Interested Parties with the IRS and any other taxing authority as required by law, including but not limited to any applicable reporting or withholding pursuant to the Foreign Investment in Real Property Tax Act ("<u>FIRPTA</u>"). The Interested Parties acknowledge and agree that the Escrow Agent shall have no responsibility for the preparation and/or filing of any tax return or any applicable FIRPTA reporting or withholding with respect to the Escrow Deposit or any income earned by the Escrow Account. The LPF and Buyer further acknowledge and agree that any taxes payable from the income earned on the investment of any sums held in the Escrow Account shall be paid by Buyer. In the absence of written direction from the LPF and Buyer, all proceeds of the Escrow Account shall be retained in the Escrow Account and reinvested from time to time by the Escrow Agent as provided in this Agreement. The Escrow Agent shall withhold any taxes it deems appropriate, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities.

80647839.1

3

7.   Concerning the Escrow Agent.

(a)   Each Interested Party acknowledges and agrees that the Escrow Agent (i) shall not be responsible for any of the agreements (other than this Agreement) referred to or described herein (including without limitation the Purchase Agreement), or for determining or compelling compliance therewith, and shall not otherwise be bound thereby, (ii) shall be obligated only for the performance of such duties, which shall be purely ministerial, as are expressly and specifically set forth in this Agreement on its part to be performed, and no implied duties or obligations of any kind shall be read into this Agreement against or on the part of the Escrow Agent, (iii) may rely upon and shall not be liable for acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and in compliance with the terms hereof and believed by it to be genuine and to have been signed or presented by the Interested Parties, and shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, (iv) shall not be obligated to take any legal or other action hereunder, in relation to any dispute arising under this Agreement, which might in its judgment involve or cause it to incur any expense or liability unless it shall have been furnished with acceptable indemnification, and (v) may consult counsel, accountants and other skilled persons reasonably satisfactory to it, and the written opinion or advice of outside counsel, accountant or other skilled persons in any instance shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder and in accordance with the written opinion or advice of such outside counsel, accountant or other skilled persons except in the case of the Escrow Agent's gross negligence or willful misconduct as finally adjudicated in a court of competent jurisdiction.  Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.  No party to this Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

(b)   The Escrow Agent shall not be liable to anyone for any action taken or omitted to be taken by it hereunder except to the extent that a final adjudication of a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the cause of loss to either party.

(c)   Notwithstanding any term appearing in this Agreement to the contrary, in no instance shall the Escrow Agent be required or obligated to distribute any Escrow Property (or take other action that may be called for hereunder to be taken by the Escrow Agent) sooner than three Business Days after it has received the applicable documents required under this Agreement in good form, as the case may be.

8.   Compensation, Expense Reimbursement and Indemnification.

(a)   The Interested Parties agree to pay the Escrow Agent's compensation for its normal services hereunder as described in Schedule A hereto. Such fees shall be paid 50% by Buyer and 50% by Seller. The Interested Parties hereby grant the Escrow Agent a lien on, right

80647839.1

4

of set-off against and security interest in, the Escrow Property for the payment of any claim for compensation, expenses and amounts due hereunder.

(b)     The Interested Parties agree to reimburse the Escrow Agent on demand for all reasonable and customary costs and expenses incurred in connection with the administration of this Agreement or the escrow created hereby or the performance or observance of its duties hereunder which are in excess of its compensation for normal services hereunder, including without limitation, payment of any reasonable legal fees and reasonable expenses incurred by the Escrow Agent in connection with resolution of any claim by any party hereunder.

(c)     The Interested Parties jointly and severally agree to indemnify the Escrow Agent and its affiliates and their respective successors, assigns, managers, attorneys, accountants, experts, directors, officers and employees (the "Indemnitees") and hold the Indemnitees harmless from and against any, claim, penalty, judgment, settlement, actions, suits, proceedings, litigation, investigations, loss, liability, damage, cost and expense of any nature incurred by the Escrow Agent arising out of or in connection with (i) the Escrow Agent's execution and performance of its duties under this Agreement, including tax reporting or withholding, enforcement of any rights or remedies or as may arise by reason of any act, omission or error of the Indemnitees, including, but not limited to, reasonable attorney's fees and other reasonable costs and expenses of outside counsel defending or preparing to defend against any claim of liability, unless and except in each case to the extent such loss, liability, damage, cost and expense shall be caused by the Escrow Agent's gross negligence or willful misconduct as finally adjudicated by a court of competent jurisdiction and (ii) the Escrow Agent's performance pursuant to any such joint instruction or direction from the Interested Parties, except to the extent that the following any such joint instruction is expressly forbidden by the terms hereof. The foregoing indemnification and agreement to hold harmless shall survive the termination of this Agreement or the resignation or substitution of the Escrow Agent. The Interested Parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in, the Escrow Property for the payment of any claim for indemnification, expenses and amounts due hereunder. The obligations contained in this Section 8 shall survive the termination of this Agreement and the resignation, replacement or removal of the Escrow Agent.

9.     Resignation.   The Escrow Agent may at any time resign as Escrow Agent hereunder by giving 30 days' prior written notice of resignation to the Interested Parties. Prior to the effective date of the resignation as specified in such notice, the Interested Parties will issue to the Escrow Agent written instructions authorizing redelivery of the Escrow Property to a bank or trust company that they select as successor to the Escrow Agent hereunder. If, however, the Interested Parties shall fail to name such a successor Escrow Agent within 30 days after the notice of resignation from the Escrow Agent, the Escrow Agent may apply to a court of competent jurisdiction for appointment of a successor Escrow Agent. The Escrow Agent shall have the right to withhold from the Escrow Property an amount equal to any compensation, expenses and amounts due hereunder in connection with the termination of the Escrow Agreement.

Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Agreement without further act.

80647839.1

10.   Dispute Resolution.  Except as provided in Section 2(b) above (which provision shall be unaffected by this Section 10), it is understood and agreed that, should any dispute arise with respect to the delivery, ownership, right of possession, and/or disposition of the Escrow Property, or should any claim be made upon the Escrow Agent or the Escrow Property by a third party, the Escrow Agent upon receipt of notice of such dispute or claim is authorized and shall retain in its possession without liability to anyone, such Escrow Property until such dispute shall have been settled either by the mutual written agreement of the Interested Parties or by a final order, decree or judgment of the Bankruptcy Court, accompanied by a letter or other written evidence from the law firm of the prevailing party certifying the finality of the order, or such other court pursuant to Section 11, the time for perfection of an appeal of such order, decree or judgment having expired.  The Escrow Agent may, but shall be under no duty whatsoever to, institute or defend any legal proceedings which relate to the Escrow Property.  The Interested Parties and LPF agree to pursue any redress or recourse in connection with any dispute without making the Escrow Agent a party to the same.

11.   Governing Law; Consent to Jurisdiction and Service.  This Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of New York (without giving effect to the principles of conflicts of laws thereof), except to the extent that the Laws of such State are superseded by the Bankruptcy Code.  For so long as Seller or the ultimate parent entity of Seller is subject to the jurisdiction of the Bankruptcy Court, the Interested Parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller and the ultimate parent entity of Seller are no longer subject to the jurisdiction of the Bankruptcy Court, the Interested Parties hereby irrevocably submit to the non-exclusive jurisdiction of any federal court sitting in New York with respect to any action or proceeding arising out of or relating to this Agreement.  In any such action or proceeding, each of the Interested Parties hereby absolutely and irrevocably (i) waives personal service of any summons, complaint, declaration or other process and (ii) agrees that the service thereof may be made by certified or registered first class mail directed to such party, as the case may be, at its address in accordance with Section 12 hereof.  The Interested Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

12.   Notices; Wiring Instructions.

(a)   Notice Addresses.  All notices, requests, consents, waivers and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been given (i) if transmitted by facsimile, upon confirmed transmittal, (ii) if personally delivered, upon delivery or refusal of delivery, (iii) if mailed by registered or certified United States mail, return receipt requested, postage prepaid, four (4) Business Days after the date indicated by the post mark stamp of the United States mail, or (iv) if sent by a nationally recognized overnight delivery service, upon delivery or refusal of delivery.  As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the address set forth in this Section 12(a) is authorized or required by law to remain closed.  All notices, consents, waivers or other communications required or permitted to be given hereunder shall be addressed to the respective party to whom such notice, consent, waiver or other communication relates at the following addresses:

80647839.1

6

If to Seller:

> Johnson Broadcasting, Inc.
> 8440 Westpark Drive
> Houston, TX  77063
> Attention:     Douglas Johnson
> Facsimile No.: _____
> Telephone No: _____

> Frank Higney, Limited Purpose Fiduciary
> Kalil & Co., Inc.
> 6363 N. Swan Road, Suite 200
> Tucson, AZ  85718
> Facsimile No.: 520-322-0584
> Telephone No: 520-795-1050

> with a copy to (which will not constitute notice):

> Tad Davidson
> Andrews Kurth LLP
> 600 Travis, Suite 4200
> Houston, TX  77002

If to Buyer:

> Una Vez Mas, L.P.
> 703 McKinney Avenue, Suite 240
> Dallas, TX 75202
> Attention:     Terry Crosby and Randy Nonberg
> Facsimile No.: _____
> Telephone No: _____

> with a copy to (which will not constitute notice):

> Fulbright & Jaworski L.L.P.
> 2200 Ross Avenue, Suite 2800
> Dallas, TX  75201
> Attention:     Toby Gerber

If to the Escrow Agent:

> JPMorgan Chase Bank, N.A.
> 712 Main Street, 5th Floor South, TX2-S037
> Houston, Texas  77002
> Attn:  Lori Knight

80647839.1

Facsimile No.:  (713) 216-6927
Telephone No:  (713) 216-5793

(b)     Wiring Instructions.  Any funds to be paid to or by the Escrow Agent hereunder shall be sent by wire transfer pursuant to the following instructions ("Standing Instructions") (or by such method of payment and pursuant to such instruction as may have been given in advance and in writing to or by the Escrow Agent, as the case may be, in accordance with Section 12(a) above):

If to Seller:

Bank Name:
Account Name:
Bank Routing  Number:
Account Number:

If to Buyer:

Bank:  _____

_____

_____

ABA #:  _____
Acct. #:  _____
Attention:  _____

If to the Escrow Agent:

JPMorgan Chase Bank, N.A.
Houston, Texas  77002
ABA#: 021000021
Acct.#: 507971817
Account Name: Southwest Escrow Wire Account
Reference: UMV-Johnson Buyer's Deposit Escrow
Attention:  May Ng, (713) 216-6467

13.     Miscellaneous.

(a)     Binding Effect; Successors.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto without prior written consent of the other parties, including the Escrow Agent, (which shall not be unreasonably withheld or delayed) except that (i) each of Buyer and Seller may assign or grant a security interest in its rights and interests hereunder to its lenders or any of its affiliates and (ii) Seller  may assign any rights it has under this Agreement as required by any final order, decree or judgment of the Bankruptcy Court or such other court pursuant to Section 11.  Nothing contained herein, express or implied, is intended to confer on

any person or entity other than the parties hereto or their successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

(b)      Modifications.  This Agreement may not be altered or modified without the express written consent of the parties hereto.  No course of conduct shall constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified.  A waiver of any of the terms and conditions of this Agreement on one occasion shall not constitute a waiver of the other terms of this Agreement, or of such terms and conditions on any other occasion.

(c)      Counterparts and Execution.    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement and shall become effective when counterparts have been signed by each of the parties and delivered to the other parties.  Any counterpart may be executed by facsimile signature and such facsimile signature shall be deemed an original.

(d)      Termination of Escrow.  This Agreement shall terminate upon the release by the Escrow Agent of all amounts contained in the Escrow Account in accordance with this Agreement.

(e)      Entire Agreement.    This Agreement and the Purchase Agreement as between the Interested Parties constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings, written or oral, between the parties hereto with respect to the subject matter hereof.  The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith, if any, including without limitation the Purchase Agreement, nor shall the Escrow Agent be required to determine if any person or entity has complied with any such  agreements, nor shall any additional obligations of the Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Agreement.  In the event of any conflict between the terms and provisions of this Escrow Agreement, those of the Purchase Agreement, any schedule or exhibit attached to the Agreement, or any other agreement among the Interested Parties, the terms and conditions of this Agreement shall control.

(f)      No Third Party Beneficiaries.  No provision of this Agreement shall be deemed to give any entity or person, except for the Interested Parties and their permitted assigns, the right to challenge any claim or request for the release of Escrow Property delivered pursuant to this Agreement.

(g)      Patriot Act Disclosure.  Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it.  Accordingly, the Interested Parties and LPF acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the Interested Parties and LPF's identity including without

limitation name, address and organizational documents ("identifying information"). The Interested Parties and FPF agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

(h)  <u>Security Procedures</u>.  In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on <u>Schedule B</u> hereto ("<u>Schedule B</u>"), and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on <u>Schedule B</u> hereto. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. If the Escrow Agent is unable to contact any of the authorized representatives identified in <u>Schedule B</u>, the Escrow Agent is hereby authorized to receive instructions from and seek confirmation of such instructions by telephone call-back to any one or more of the Interested Parties' executive officers ("<u>Executive Officers</u>"), as the case may be, which shall include the titles of Chief Executive Officer, President or Chief Financial Officer, as the Escrow Agent may select. Such "Executive Officer" shall deliver to the Escrow Agent a fully executed incumbency certificate, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Interested Parties to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank. The Escrow Agent may apply any of the escrowed funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. The Interested Parties acknowledge that these security procedures are commercially reasonable.

(i)  <u>Repetitive Funds Transfer Instructions</u>.  The Interested Parties acknowledge that repetitive funds transfer instructions may be given to the Escrow Agent for one or more beneficiaries where only the date of the requested transfer, the amount of funds to be transferred, or the description of the payment shall change within the repetitive Standing Instructions. Accordingly, Interested Parties shall deliver to the Escrow Agent such specific Standing Instructions only for each respective beneficiary as set forth in <u>Section 12</u> to this Agreement, by facsimile or other written instruction. The Escrow Agent may rely solely upon such Standing Instructions and all identifying information set forth therein for each beneficiary. The Escrow Agent and the Interested Parties agree that such Standing Instructions shall be effective as the funds transfer instructions of the Interested Parties, without requiring a verifying callback, whether or not authorized, if such Standing Instructions are consistent with previously authenticated Standing Instructions for that beneficiary. The Interested Parties acknowledge that such Standing Instructions are a security procedure and are commercially reasonable.

14.  <u>Compliance with Court Orders</u>.  In the event that any Escrow Property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Escrow Agent is hereby

80647839.1

expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

*   *   *

IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be duly executed and delivered in its name and on the date first set forth above.

**UNA VEZ MAS HOUSTON, LLC**

By: _____
Name: _____
Title: _____

**FRANK HIGNEY**

By: _____
Name:   Frank Higney
Title:   in the capacity as Limited Purpose Fiduciary

**JOHNSON BROADCASTING INC.**

By: _____
Name:   Frank Higney
Title:   in the capacity as Limited Purpose Fiduciary

**JOHNSON BROADCASTING OF DALLAS, INC.**

By: _____
Name:   Frank Higney
Title:   in the capacity as Limited Purpose Fiduciary

**JPMORGAN CHASE BANK, N.A.**

By: _____
Name: _____
Title: _____

80647839.1

[Signature Page to Escrow Agreement]

SCHEDULE A

SCHEDULE B

**Telephone Number(s) and authorized signature(s) for**

**Person(s) Designated to Give and Confirm Funds Transfer Instructions**

If to Buyer:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

If to Seller or LPF:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. Doug Johnson | 713-974-5151 | _____ |
| 2. Karen Nicolaou | 713-805-2343 | _____ |
| 3. Frank Higney | 520-795-1050 | _____ |

All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer.

80647839.1

Schedule B-1

**EXHIBIT C**

**<u>SECTION 6.9 ESCROW AGREEMENT</u>**

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (this "Agreement") is dated as of_____, 2009, by and among UNA VEZ MAS HOUSTON, LLC, a Delaware limited liability company ("Buyer"), Frank Higney, in his capacity as the Bankruptcy Court-approved Limited Purpose Fiduciary (the "LPF"), on behalf of JOHNSON BROADCASTING, INC., a Michigan corporation ("JBI"), and JOHNSON BROADCASTING OF DALLAS, INC., a Texas corporation (("JBDI") and collectively with JBI, "Seller"), and JPMORGAN CHASE BANK, N.A., a national banking association (the "Escrow Agent"). Buyer and Seller are sometimes referred to herein, collectively, as the "Interested Parties." Capitalized terms used and not defined in this Agreement shall have the respective meanings ascribed thereto in the Purchase Agreement (as defined below).

**WHEREAS,** on October 13, 2008, JBI and JBDI filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (as now in effect or hereafter amended, the "Bankruptcy Code");

**WHEREAS,** on February 26, 2009, the LPF was appointed as a limited purpose fiduciary by the Bankruptcy Court pursuant to the LPF Order, which describes, among other things, the role of the LPF and provides the LPF authority to sell the Station Assets;

**WHEREAS,** on October __, 2009, the Interested Parties entered into an Asset Purchase Agreement (the "Purchase Agreement"), pursuant to which Buyer will acquire the Station Assets and the Bankruptcy Court has entered the Sale Approval Order;

**WHEREAS,** pursuant to the Purchase Agreement, (i) at the Houston Closing (hereinafter defined), Buyer is to deposit $600,000 (the "Houston Section 6.9 Escrow Amount") and (ii) at the Dallas Closing (hereinafter defined), Buyer is to deposit $400,000 (the "Dallas Section 6.9 Escrow Amount") into an account established and maintained by the Escrow Agent, such amounts so deposited to be held and distributed by the Escrow Agent on the terms and subject to the conditions set forth herein; and

**WHEREAS,** the Interested Parties wish to engage the Escrow Agent to act, and the Escrow Agent is willing to act, as Escrow Agent hereunder and, in that capacity, to hold, administer and distribute the Escrow Property (as defined below) in accordance with, and subject to, the terms of this Agreement.

**NOW, THEREFORE,** for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Deposit of Funds.

(a)      The Interested Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

(b)      No later than 5:00 p.m. (Houston/Dallas, Texas time), and in accordance with the Purchase Agreement, (i) on _____, 2009 (the "Houston Closing Date"),

Buyer shall deposit with the Escrow Agent the Houston Section 6.9 Escrow Amount into the Escrow Account (as defined below) and (ii) on _____, 2009 (the "Dallas Closing Date"), Buyer shall deposit with the Escrow Agent the Dallas Section 6.9 Escrow Amount into the Escrow Account. The Houston Section 6.9 Escrow Amount, when deposited with the Escrow Agent, and the Dallas Section 6.9 Escrow Amount, when deposited with the Escrow Agent, and any interest, income and earnings on either amount, are collectively referred to herein as the "Escrow Property."

(c)     The Escrow Agent agrees to hold the Escrow Property in an account established with the Escrow Agent (the "Escrow Account") and to administer the Escrow Property in accordance with the terms of this Agreement. The Escrow Agent shall hold the Escrow Property and shall not disburse the Escrow Property except as provided herein.

2.     Release of Escrow Property. The Escrow Agent shall release the Houston Section 6.9 Escrow Amount and/or the Dallas Section 6.9 Escrow Amount to Seller or to Buyer, as the case may be, upon receipt of:

(a)     Joint Written Instructions. Joint written instructions regarding the release of the Houston Section 6.9 Escrow Amount and/or the Dallas Section 6.9 Escrow Amount executed by Buyer and Seller, in which case the Escrow Agent shall release the Escrow Property (or a portion thereof) in accordance with such written instructions; or

(b)     Court Direction. Upon receipt by the Escrow Agent of a certified written instruction, order or judgment (which shall have become final and nonappealable) entered by a court of competent jurisdiction, directing the Escrow Agent to release the Escrow Property (or a portion thereof), which shall be accompanied by a letter or other written evidence from the law firm of the prevailing party certifying the finality of the order, in which case the Escrow Agent shall release the Escrow Property (or a portion thereof) as directed by such written instruction, order or judgment.

(c)     No Other Disbursements. The Escrow Agent shall disburse the Escrow Property only in accordance with this Section 2. Upon delivery of the Escrow Property by the Escrow Agent, this Escrow Agreement shall terminate, subject to the provisions of Section 8.

3.     Fees Payable to the Escrow Agent. The Escrow Agent shall deduct from the amount of any release of the Houston Section 6.9 Escrow Amount and/or the Dallas Section 6.9 Escrow Amount (a) the portion of the fees payable by Buyer to the Escrow Agent pursuant to Section 8, if such release is made for the benefit of Buyer or (b) the entire amount of the fees payable by the Interested Parties to the Escrow Agent pursuant to Section 8, if such release is made for the benefit of Seller.

4.     Investment of Funds. During the term of this Agreement, the Escrow Property shall be invested solely in a JPMorgan Chase Bank, N.A. Money Market Deposit Account ("MMDA"). The rate of return on an MMDA varies from time to time based upon current market conditions. The Escrow Agent is hereby authorized to execute purchases and sales of authorized investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Interested Parties recognize and agree that the Escrow Agent

80647840.1

2

will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Escrow Property or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Agreement. The Escrow Agent shall not be responsible for any loss suffered from any investment, including, without limitation, any market loss on any investment liquidated prior to maturity in order to make a payment required hereunder, except any loss resulting from its gross negligence or willful misconduct or failure to invest the Escrow Property in accordance with this <u>Section 4</u>. All earnings received from the investment of the Escrow Property shall be credited to, and shall become a part of, the Escrow Account (and any losses on such investments shall be debited to the Escrow Account). The Escrow Agent shall be responsible for reporting any such earnings to the Internal Revenue Service.

5.    <u>Interest, Income and Earnings on the Houston Section 6.9 Escrow Amount and/or the Dallas Section 6.9 Escrow Amount</u>. Any interest, income or other amounts earned on the Houston Section 6.9 Escrow Amount and/or the Dallas Section 6.9 Escrow Amount (the "<u>Escrow Interest</u>") shall be payable to Buyer exclusively, whether or not said interest, income and earnings have been distributed to Buyer. Therefore, notwithstanding anything to the contrary in this Agreement, the Escrow Interest shall not be incorporated into the Houston Section 6.9 Escrow Amount or the Dallas Section 6.9 Escrow Amount and shall under no circumstances be paid or released by the Escrow Agent to Seller.

6.    <u>Certification of Taxpayer Identification Number and Withholding</u>.

(a)    Each of the Interested Parties has provided the Escrow Agent with its certified tax identification number by signing and returning a Form W-9 (or Form W-8, if applicable) to the Escrow Agent. The Interested Parties understand that, in the event their tax identification numbers are not certified to the Escrow Agent, the Internal Revenue Code of 1986, as amended from time to time, or other applicable revenue-related laws promulgated by the applicable governmental authority may require withholding of a portion of any interest or other income earned on the investment of the Escrow Property.

(b)    The Escrow Agent shall deduct and withhold from the consideration otherwise payable pursuant to this Agreement to Buyer or Seller, as applicable, such amounts as the Escrow Agent is required to deduct and withhold with respect to the making of such payment under any provision of federal, state, local or foreign tax law.

(c)    All interest or other income earned under the Agreement shall be allocated to the Buyer and reported, as and to the extent required by law, by the Escrow Agent to the Internal Revenue Service (the "<u>IRS</u>"), or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow by the Buyer whether or not said income has been distributed during such year. Any other tax returns required to be filed will be prepared and filed by the Interested Parties with the IRS and any other taxing authority as required by law, including but not limited to any applicable reporting or withholding pursuant to the Foreign Investment in Real Property Tax Act ("<u>FIRPTA</u>"). The Interested Parties acknowledge and agree that the Escrow Agent shall have no responsibility for the preparation and/or filing of any tax return or any applicable FIRPTA reporting or withholding with respect to

80647840.1

3

the Escrow Deposit or any income earned by the Escrow Account. The LPF and Buyer further acknowledge and agree that any taxes payable from the income earned on the investment of any sums held in the Escrow Account shall be paid by Buyer. In the absence of written direction from the LPF and Buyer, all proceeds of the Escrow Account shall be retained in the Escrow Account and reinvested from time to time by the Escrow Agent as provided in this Agreement. The Escrow Agent shall withhold any taxes it deems appropriate, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities.

7.     Concerning the Escrow Agent.

(a)     Each Interested Party acknowledges and agrees that the Escrow Agent (i) shall not be responsible for any of the agreements (other than this Agreement) referred to or described herein (including without limitation the Purchase Agreement), or for determining or compelling compliance therewith, and shall not otherwise be bound thereby, (ii) shall be obligated only for the performance of such duties, which shall be purely ministerial, as are expressly and specifically set forth in this Agreement on its part to be performed, and no implied duties or obligations of any kind shall be read into this Agreement against or on the part of the Escrow Agent, (iii) may rely upon and shall not be liable for acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and in compliance with the terms hereof and believed by it to be genuine and to have been signed or presented by the Interested Parties, and shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, (iv) shall not be obligated to take any legal or other action hereunder, in relation to any dispute arising under this Agreement, which might in its judgment involve or cause it to incur any expense or liability unless it shall have been furnished with acceptable indemnification, and (v) may consult counsel, accountants and other skilled persons reasonably satisfactory to it, and the written opinion or advice of outside counsel, accountant or other skilled persons in any instance shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder and in accordance with the written opinion or advice of such outside counsel, accountant or other skilled persons except in the case of the Escrow Agent's gross negligence or willful misconduct as finally adjudicated in a court of competent jurisdiction. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action. No party to this Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

(b)     The Escrow Agent shall not be liable to anyone for any action taken or omitted to be taken by it hereunder except to the extent that a final adjudication of a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the cause of loss to either party.

(c)     Notwithstanding any term appearing in this Agreement to the contrary, in no instance shall the Escrow Agent be required or obligated to distribute any Escrow Property

80647840.1

4

(or take other action that may be called for hereunder to be taken by the Escrow Agent) sooner than three Business Days after it has received the applicable documents required under this Agreement in good form, as the case may be.

    8.    <u>Compensation, Expense Reimbursement and Indemnification.</u>

    (a)    The Interested Parties agree to pay the Escrow Agent's compensation for its normal services hereunder as described in <u>Schedule A</u> hereto. Such fees shall be paid 50% by Buyer and 50% by Seller. The Interested Parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in, the Escrow Property for the payment of any claim for compensation, expenses and amounts due hereunder.

    (b)    The Interested Parties agree to reimburse the Escrow Agent on demand for all reasonable and customary costs and expenses incurred in connection with the administration of this Agreement or the escrow created hereby or the performance or observance of its duties hereunder which are in excess of its compensation for normal services hereunder, including without limitation, payment of any reasonable legal fees and reasonable expenses incurred by the Escrow Agent in connection with resolution of any claim by any party hereunder.

    (c)    The Interested Parties jointly and severally agree to indemnify the Escrow Agent and its affiliates and their respective successors, assigns, managers, attorneys, accountants, experts, directors, officers and employees (the "<u>Indemnitees</u>") and hold the Indemnitees harmless from and against any, claim, penalty, judgment, settlement, actions, suits, proceedings, litigation, investigations, loss, liability, damage, cost and expense of any nature incurred by the Escrow Agent arising out of or in connection with (i) the Escrow Agent's execution and performance of its duties under this Agreement, including tax reporting or withholding, enforcement of any rights or remedies or as may arise by reason of any act, omission or error of the Indemnitees, including, but not limited to, reasonable attorney's fees and other reasonable costs and expenses of outside counsel defending or preparing to defend against any claim of liability, unless and except in each case to the extent such loss, liability, damage, cost and expense shall be caused by the Escrow Agent's gross negligence or willful misconduct as finally adjudicated by a court of competent jurisdiction and (ii) the Escrow Agent's performance pursuant to any such joint instruction or direction from the Interested Parties, except to the extent that the following any such joint instruction is expressly forbidden by the terms hereof. The foregoing indemnification and agreement to hold harmless shall survive the termination of this Agreement or the resignation or substitution of the Escrow Agent. The Interested Parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in, the Escrow Property for the payment of any claim for indemnification, expenses and amounts due hereunder. The obligations contained in this <u>Section 8</u> shall survive the termination of this Agreement and the resignation, replacement or removal of the Escrow Agent.

    9.    <u>Resignation.</u>  The Escrow Agent may at any time resign as Escrow Agent hereunder by giving 30 days' prior written notice of resignation to the Interested Parties. Prior to the effective date of the resignation as specified in such notice, the Interested Parties will issue to the Escrow Agent written instructions authorizing redelivery of the Escrow Property to a bank or trust company that they select as successor to the Escrow Agent hereunder. If, however, the Interested Parties shall fail to name such a successor Escrow Agent within 30 days after the

80647840.1

notice of resignation from the Escrow Agent, the Escrow Agent may apply to a court of competent jurisdiction for appointment of a successor Escrow Agent. The Escrow Agent shall have the right to withhold from the Escrow Property an amount equal to any compensation, expenses and amounts due hereunder in connection with the termination of the Escrow Agreement.

Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Agreement without further act.

10.    Dispute Resolution. Except as provided in Section 2(b) above (which provision shall be unaffected by this Section 10), it is understood and agreed that, should any dispute arise with respect to the delivery, ownership, right of possession, and/or disposition of the Escrow Property, or should any claim be made upon the Escrow Agent or the Escrow Property by a third party, the Escrow Agent upon receipt of notice of such dispute or claim is authorized and shall retain in its possession without liability to anyone, such Escrow Property until such dispute shall have been settled either by the mutual written agreement of the Interested Parties or by a final order, decree or judgment of the Bankruptcy Court, accompanied by a letter or other written evidence from the law firm of the prevailing party certifying the finality of the order, or such other court pursuant to Section 11, the time for perfection of an appeal of such order, decree or judgment having expired. The Escrow Agent may, but shall be under no duty whatsoever to, institute or defend any legal proceedings which relate to the Escrow Property. The Interested Parties and LPF agree to pursue any redress or recourse in connection with any dispute without making the Escrow Agent a party to the same.

11.    Governing Law; Consent to Jurisdiction and Service. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the Laws of the State of New York (without giving effect to the principles of conflicts of laws thereof), except to the extent that the Laws of such State are superseded by the Bankruptcy Code. For so long as Seller or the ultimate parent entity of Seller is subject to the jurisdiction of the Bankruptcy Court, the Interested Parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller and the ultimate parent entity of Seller are no longer subject to the jurisdiction of the Bankruptcy Court, the Interested Parties hereby irrevocably submit to the non-exclusive jurisdiction of any federal court sitting in New York with respect to any action or proceeding arising out of or relating to this Agreement. In any such action or proceeding, each of the Interested Parties hereby absolutely and irrevocably (i) waives personal service of any summons, complaint, declaration or other process and (ii) agrees that the service thereof may be made by certified or registered first class mail directed to such party, as the case may be, at its address in accordance with Section 12 hereof. The Interested Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

12.    Notices; Wiring Instructions.

(a)    Notice Addresses. All notices, requests, consents, waivers and other communications required or permitted to be given hereunder shall be in writing and shall be

deemed to have been given (i) if transmitted by facsimile, upon confirmed transmittal, (ii) if personally delivered, upon delivery or refusal of delivery, (iii) if mailed by registered or certified United States mail, return receipt requested, postage prepaid, four (4) Business Days after the date indicated by the post mark stamp of the United States mail, or (iv) if sent by a nationally recognized overnight delivery service, upon delivery or refusal of delivery. As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the address set forth in this Section 12(a) is authorized or required by law to remain closed. All notices, consents, waivers or other communications required or permitted to be given hereunder shall be addressed to the respective party to whom such notice, consent, waiver or other communication relates at the following addresses:

If to Seller:

>Johnson Broadcasting, Inc.
>8440 Westpark Drive
>Houston, TX 77063
>Attention:     Douglas Johnson
>Facsimile No.: _____
>Telephone No: _____

>Frank Higney, Limited Purpose Fiduciary
>Kalil & Co., Inc.
>6363 N. Swan Road, Suite 200
>Tucson, AZ 85718
>Facsimile No.: 520-322-0584
>Telephone No: 520-795-1050

>with a copy to (which will not constitute notice):

>Tad Davidson
>Andrews Kurth LLP
>600 Travis, Suite 4200
>Houston, TX 77002

If to Buyer:

>Una Vez Mas, L.P.
>703 McKinney Avenue, Suite 240
>Dallas, TX 75202
>Attention:     Terry Crosby and Randy Nonberg
>Facsimile No.: _____
>Telephone No: _____

>with a copy to (which will not constitute notice):

>Fulbright & Jaworski L.L.P.
>2200 Ross Avenue, Suite 2800

80647840.1

7

Dallas, TX  75201
Attention:     Toby Gerber

If to the Escrow Agent:

JPMorgan Chase Bank, N.A.
712 Main Street, 5th Floor South, TX2-S037
Houston, Texas  77002
Attn:  Lori Knight
Facsimile No.:  (713) 216-6927
Telephone No:  (713) 216-5793

(b)     Wiring Instructions.  Any funds to be paid to or by the Escrow Agent hereunder shall be sent by wire transfer pursuant to the following instructions ("Standing Instructions") (or by such method of payment and pursuant to such instruction as may have been given in advance and in writing to or by the Escrow Agent, as the case may be, in accordance with Section 12(a) above):

If to Seller:

Bank Name:
Account Name:
Bank Routing  Number:
Account Number:

If to Buyer:

Bank:  _____

_____

_____
ABA #:  _____
Acct. #:  _____
Attention:  _____

If to the Escrow Agent:

JPMorgan Chase Bank, N.A.
Houston, Texas
ABA#: 021000021
Acct.#: 507971817
Account Name:  Southwest Escrow Wire Account
Reference:  UVM-Johnson Section 6.9 Escrow
Attention:  May Ng, (713) 216-6467

13.   <u>Miscellaneous</u>.

(a)   <u>Binding Effect; Successors</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto without prior written consent of the other parties, including the Escrow Agent, (which shall not be unreasonably withheld or delayed) except that (i) each of Buyer and Seller may assign or grant a security interest in its rights and interests hereunder to its lenders or any of its affiliates and (ii) Seller may assign any rights it has under this Agreement as required by any final order, decree or judgment of the Bankruptcy Court or such other court pursuant to <u>Section 11</u>.  Nothing contained herein, express or implied, is intended to confer on any person or entity other than the parties hereto or their successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

(b)   <u>Modifications</u>.  This Agreement may not be altered or modified without the express written consent of the parties hereto.  No course of conduct shall constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified.  A waiver of any of the terms and conditions of this Agreement on one occasion shall not constitute a waiver of the other terms of this Agreement, or of such terms and conditions on any other occasion.

(c)   <u>Counterparts and Execution</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement and shall become effective when counterparts have been signed by each of the parties and delivered to the other parties.  Any counterpart may be executed by facsimile signature and such facsimile signature shall be deemed an original.

(d)   <u>Termination of Escrow</u>.  This Agreement shall terminate upon the release by the Escrow Agent of all amounts contained in the Escrow Account in accordance with this Agreement.

(e)   <u>Entire Agreement</u>.  This Agreement and the Purchase Agreement as between the Interested Parties constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings, written or oral, between the parties hereto with respect to the subject matter hereof.  The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith, if any, including without limitation the Purchase Agreement, nor shall the Escrow Agent be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of the Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Agreement.  In the event of any conflict between the terms and provisions of this Escrow Agreement, those of the Purchase <u>Agreement, any schedule or exhibit attached to the Agreement,</u> or any other agreement among the Interested Parties, the terms and conditions of this Agreement shall control.

80647840.1

9

      (f)    <u>No Third Party Beneficiaries</u>.  No provision of this Agreement shall be deemed to give any entity or person, except for the Interested Parties and their permitted assigns, the right to challenge any claim or request for the release of Escrow Property delivered pursuant to this Agreement.

      (g)    <u>Patriot Act Disclosure</u>.  Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "<u>USA PATRIOT Act</u>") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it.  Accordingly, the Interested Parties and LPF acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the Interested Parties and LPF's identity including without limitation name, address and organizational documents ("identifying information").  The Interested Parties and LPF agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

      (h)    <u>Security Procedures</u>.  In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on <u>Schedule B</u> hereto ("<u>Schedule B</u>"), and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated.  Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on <u>Schedule B</u> hereto.  The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent.  If the Escrow Agent is unable to contact any of the authorized representatives identified in <u>Schedule B</u>, the Escrow Agent is hereby authorized to receive instructions from and seek confirmation of such instructions by telephone call-back to any one or more of the Interested Parties' executive officers ("<u>Executive Officers</u>"), as the case may be, which shall include the titles of Chief Executive Officer, President or Chief Financial Officer, as the Escrow Agent may select.  Such "Executive Officer" shall deliver to the Escrow Agent a fully executed incumbency certificate, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer.  The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by Interested Parties to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank.  The Escrow Agent may apply any of the escrowed funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. The Interested Parties acknowledge that these security procedures are commercially reasonable.

      (i)    <u>Repetitive Funds Transfer Instructions</u>.  The Interested Parties acknowledge that repetitive funds transfer instructions may be given to the Escrow Agent for one or more beneficiaries where only the date of the requested transfer, the amount of funds to be transferred, or the description of the payment shall change within the repetitive Standing Instructions.  Accordingly, Interested Parties shall deliver to the Escrow Agent such specific Standing Instructions only for each respective beneficiary as set forth in <u>Section 12</u> to this

80647840.1

Agreement, by facsimile or other written instruction. The Escrow Agent may rely solely upon such Standing Instructions and all identifying information set forth therein for each beneficiary. The Escrow Agent and the Interested Parties agree that such Standing Instructions shall be effective as the funds transfer instructions of the Interested Parties, without requiring a verifying callback, whether or not authorized, if such Standing Instructions are consistent with previously authenticated Standing Instructions for that beneficiary. The Interested Parties acknowledge that such Standing Instructions are a security procedure and are commercially reasonable.

14.    <u>Compliance with Court Orders</u>. In the event that any Escrow Property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

*   *   *

80647840.1

11

IN WITNESS WHEREOF, each of the parties has caused this Escrow Agreement to be duly executed and delivered in its name and on the date first set forth above.

**UNA VEZ MAS HOUSTON, LLC**

By: _____
Name: _____
Title: _____

**FRANK HIGNEY**

By: _____
Name:   Frank Higney
Title:   in the capacity as Limited Purpose Fiduciary

**JOHNSON BROADCASTING INC.**

By: _____
Name:   Frank Higney
Title:   in the capacity as Limited Purpose Fiduciary

**JOHNSON BROADCASTING OF DALLAS, INC.**

By: _____
Name:   Frank Higney
Title:   in the capacity as Limited Purpose Fiduciary

**JPMORGAN CHASE BANK, N.A.**

By: _____
Name: _____
Title: _____

80647840.1

[Signature Page to Escrow Agreement]

SCHEDULE A

Schedule A-1

## SCHEDULE B

**Telephone Number(s) and authorized signature(s) for**

**Person(s) Designated to Give and Confirm Funds Transfer Instructions**

If to Buyer:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

If to Seller or LPF:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Doug Johnson | 713-974-5151 | _____ |
| 2. | Karen Nicolaou | 713-805-2343 | _____ |
| 3. | Frank Higney | 520-795-1050 | _____ |

All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer.

80647840.1

Schedule B-1