**EXHIBIT D**

**SALE APPROVAL ORDER**

65317456.8 / 10614547

**DRAFT AS OF 10/9/09**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

- - - - - - - - - - - - - - - - - - - - - - - x

In re:                                         : Chapter 11
                                               :
JOHNSON BROADCASTING, INC., et al.,            : Case No. 08-36583
                                               :
          Debtors.                             : Jointly Administered

- - - - - - - - - - - - - - - - - - - - - - - x

**ORDER UNDER 11 U.S.C. §§ 105(A), 363 AND 365 AND FED. R. BANKR.
P. 2002, 6004,6006 AND 9014, (A) APPROVING ASSET PURCHASE
AGREEMENT; (B) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS
AND ENCUMBRANCES, AND (C) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

THIS MATTER COMING TO BE HEARD upon the Motion of Johnson Broadcasting,

Inc. and Johnson Broadcasting of Dallas, Inc. (the "Debtors"), for entry of an order under 11

U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 (the "Sale

Order") authorizing (i) the Debtors' sale (the "Sale") of substantially all assets of the Debtor (the

"Purchased Assets"), free and clear of all mortgages, licenses, security interests, pledges, liens,

charges, claims, judgments, options, rights, voting or other restrictions, rights-of-way, covenants,

conditions, easements, encroachments, restrictions, other third-party rights or title defects or

encumbrances of any nature whatsoever, whether legal or equitable in nature, whether legal or

equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated

or unliquidated, senior or subordinated and whether contractual, statutory or common law in

origin, including any interest in property and all Liens, claims and interests (collectively, the

"Interests") except for Permitted Liens pursuant to the Asset Purchase Agreement (the "Asset

Purchase Agreement"), dated as of October 9, 2009, by and among Frank Higney, in his capacity

as Bankruptcy Court-approved Limited Purpose Fiduciary on behalf of the Debtors, collectively

as Seller, and Una Vez Mas, LP (the "Buyer"); (ii) the Debtors' assumption and assignment to the Buyer of certain executory contracts and unexpired leases, pursuant to the Asset Purchase Agreement[1] free and clear of all Interests, and (iii) the assumption by the Buyer of the Assumed Liabilities pursuant to the Asset Purchase Agreement; and the Court having entered an order on _____, 2009 (the "Bid Procedures Order") (Docket No. ___) approving (i) the Bidding Procedures, (ii) the proposed Bidding Protections and (iii) the form and manner of notice of the Auction and the Sale Hearing (as defined below); and as described in the record of the Sale Hearing, the Buyer will receive and assume the Purchased Assets and the Assumed Liabilities pursuant to the terms described herein, as having submitted Qualified Bids, pursuant to the Bid Procedures Order; and the Seller having conducted an Auction on _____, 2009 (the "Auction"); and the Buyer having been determined by the LPF to have submitted the highest and best Qualified Bid;  and a hearing on the Sale Motion having been held on _____, 2009 (the "Sale Hearing"); and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (i) the Sale Motion, (ii) any objections thereto, and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and upon the record of the Sale Hearing, and after due deliberation thereon; and good cause appearing therefor.

---

[1]    All capitalized terms not defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement.

IT IS HEREBY FOUND AND DETERMINED THAT:

1.　　The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.　　The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), (m), and (n), and 365 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006 and 9014.

3.　　Proper, timely, adequate and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Sale, and the assumption and assignment to the Buyer of certain executory contracts of the Debtors has been provided in accordance with 11 U.S.C. §§ 102(1), 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014, other provisions of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court, orders of the Bankruptcy Court, and other applicable law, and due process and in compliance with the Bid Procedures Order, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Sale Motion, the Auction or the Sale Hearing, or the assumption and assignment of the executory contracts is or shall be required.

4.　　The LPF has marketed the Purchased Assets and conducted the sale process in compliance with the Bid Procedures Order.

5.　　The LPF (i) has full authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets by the Seller has been duly and validly authorized by all necessary corporate action of the Debtors, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (iii) have taken all corporate action necessary to authorize and

approve the Asset Purchase Agreement and the consummation by Seller of the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Seller to consummate such transactions.

6.    Approval of the Asset Purchase Agreement and consummation of the Sale at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

7.    The Seller has demonstrated both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b), and the sale is an appropriate exercise of the LPF's fiduciary duties in that, among other things:

> (1)    The LPF diligently and in good faith marketed the Purchased Assets to secure the highest and best offer therefor by, among other things, mailing the Notice of Auction and Sale Hearing, the Sale Motion and a draft of this Sale Order to each of the entities that had previously expressed an interest in the Debtors' Purchased Assets.  In addition, the LPF conducted an Auction pursuant to the Bid Procedures Order.

> (3)    A sale of the Purchased Assets at this time to the Buyer pursuant to 11 U.S.C. § 363(b) is the only viable alternative to preserve the value of the Purchased Assets, and maximize Debtors' estates for the benefit of all constituencies.  Delaying the Sale of the Purchased Assets undoubtedly will result in a loss of value of the Purchased Assets.

8.    A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the United States Trustee for the Southern District of Texas; (ii) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets during the past eight months; (iii) all entities known to have an Interest in the Purchased Assets; (iv) all other parties to the executory contracts being assumed and assigned; and (v) the parties listed on Debtors' Master Service List.

9.     The Asset Purchase Agreement was negotiated, proposed and entered into by the LPF and the Buyer without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

10.     The Buyer is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, the Buyer is entitled to all of the protections afforded thereby. The Buyer will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement at all times after the entry of this Sale Order. The Buyer has not engaged in collusive bidding or otherwise violated the provisions of § 363(n) of the Bankruptcy Code.

11.     The consideration provided by the Buyer for the Purchased Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

13.     The transfer of the Purchased Assets to the Buyer will be a legal, valid and effective transfer of the Purchased Assets.

14.     The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, if the sale of the Purchased Assets to the Buyer were not free and clear of all Interests of any kind or nature whatsoever and if the assignment of the executory contracts, could not be made under section 365 of the Bankruptcy Code.

15.     The Buyer shall purchase the Purchased Assets free and clear of all Interests, including without limitation all liens, claims and encumbrances pursuant to 11 U.S.C. § 363. The Buyer does not constitute a successor-in-interest to Seller for all purposes, including successor liability, except as otherwise set forth herein.  No person or entity shall assert by suit or otherwise against Buyer or their respective successors in interest any claim which they had, have or may have against the Debtors, or any liability, debt or obligation relating to or arising from the Purchased Assets, or the Debtors' operations or use of the Purchased Assets, and all persons and entities are hereby enjoined from asserting against the Buyer in any way such claims, liabilities, debts or obligation, and all persons and entities holding Liens and Claims against the Debtors arising on or before the Closing Date, or out of events occurring prior to the Closing, of any kind and nature with respect to the Purchased Assets hereby are forever barred, estopped and permanently enjoined from asserting such Liens and Claims of any kind or nature against the Buyer, its successors or assigns, or the Purchased Assets.  Nothing contained in this paragraph shall bar the assertion of Assumed Liabilities against the Buyer nor shall it be deemed a release in any way of the Permitted Liens.

16.     The Seller may sell the Purchased Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  Those (i) holders of Interests and (ii) non-debtor parties to executory contracts being assigned who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

17.     The Seller has demonstrated that it is an exercise of its sound business judgment and fiduciary duties to assume and assign certain executory contracts to the Buyer as set forth in the Asset Purchase Agreement, and the assumption and assignment of the executory contracts is

in the best interests of the Debtors, their estates, and their creditors.  The executory contracts being assigned to, and the liabilities being assumed by the Buyer, are an integral part of the Purchased Assets being purchased by the Buyer and, accordingly, such assumption and assignment of the executory contracts are reasonable, enhance the value of the Debtors' estates, and do not constitute unfair discrimination.

18.     The Seller and the Buyer (i) have provided adequate assurance of the Buyer's future performance of the executory contracts being assigned pursuant to the Asset Purchase Agreement, within the meaning of 11 U.S.C. § 365(b)(1)(C) and 365(f)(2)(B), (ii) will cure, or have provided adequate assurance of cure, of any default existing prior to the date hereof under any of the executory contracts being assigned pursuant to and consistent with the Asset Purchase Agreement, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (iii) will provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the executory contracts being assigned pursuant to and consistent with the Asset Purchase Agreement, within the meaning of 11 U.S.C. § 365(b)(1)(B).

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Sale Motion is granted, as further described herein.

2.     All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled on the merits.

3.     The Asset Purchase Agreement, in the form attached to the Sale Motion and as amended as set forth in Exhibit "1" hereto, and all of the terms and conditions thereof, are hereby approved.

4.    Pursuant to 11 U.S.C. § 363(b), the Seller is authorized and directed to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement.

5.    The Seller is authorized and directed to execute and deliver, and is empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take all further actions as may be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement.

6.    Except as expressly permitted or otherwise specifically provided for in the Asset Purchase Agreement or this Sale Order, pursuant to 11 U.S.C. §§ 105(a) and 363(f), the Purchased Assets shall be transferred to the Buyer, respectively, and as of the Closing Date, shall be free and clear of all Interests of any kind or nature whatsoever, with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale, with the same validity, force and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

7.    Except as expressly permitted or otherwise specifically provided for in the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or the Purchased Assets, arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased

-8-

Assets to Buyer, hereby are forever barred and estopped from asserting against the Buyer, or its successors or assigns, its property, or the Purchased Assets, such persons' or entities' Interests.

8.     Pursuant to 11 U.S.C. §§ 105 (a) and 365, and subject to and conditioned upon the Closing of the Sale, the Debtors' assumption and assignment to the Buyer, the Buyer's assumption on the terms set forth in the Asset Purchase Agreement of the executory contracts being assigned is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f)(2) with respect thereto are hereby deemed satisfied.

9.     Debtors are hereby authorized and directed in accordance with 11 U.S.C. §§ 105(a) and 365 to assume and assign to the Buyer, effective upon the Closing of the Sale, the executory contracts and unexpired leases being assigned pursuant to the Asset Purchase Agreement and identified on Schedule 2.3(a), 2.3(b), 6.9(a) and 6.9(b), as amended, free and clear of all Interests of any kind or nature whatsoever.  The Debtors are hereby authorized to pay at the Closing the cure costs associated with Assumed Contracts, subject to any offset rights which the Debtors may have against any cure amounts due to any non-Debtor party to an Assumed Contract.

10.     Each non-Debtor party to an Assumed Contract is hereby forever barred, estopped and permanently enjoined from asserting against the Buyer or Buyer's successors or assigns any default existing as of the Closing Date or any Claim asserted or assertable against the Debtors and pursuant to 11 U.S.C. § 365(f)(3) such parties are prohibited from enforcing any provision under any such Assumed Contract that would act to terminate or modify the terms of such Assumed Contract upon any assignment or change in control.

11.     The executory contracts being assigned to the Buyer pursuant to the Asset Purchase Agreement, shall be transferred to, and remain in full force and effect for the benefit of

the Buyer in accordance with their respective terms, notwithstanding any provision in any such assigned contracts that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Debtors and their estates shall be relieved from any liability for any breach of any assigned contracts after such assignment to and assumption by the Buyer on the Closing Date, first arising post-Closing.  Likewise, the Buyer shall be relieved from any liability for any breach of any assigned contracts which occurred or arose out of events prior to the assignment and assumption to the Buyer.

12.     The Purchase Price provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement (i) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, and (ii) is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

13.     On the Closing Date of the Sale, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

14.     This Sale Order shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Debtors or the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated (other than the Permitted Liens and Assumed Liabilities), and that the conveyances described herein have been effected.

15.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens or other documents or agreements evidencing Interests in the Debtors or the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper

form for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, releases of all Interests which the person or entity has with respect to the Debtors or

the Purchased Assets or otherwise, then the Buyer is hereby authorized to file, register, or

otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise

recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased

Assets of any kind or nature whatsoever and the filing officer is hereby directed to accept the

filing of the Sale Order by the Buyer as evidence of the release of such encumbrances, other than

with respect to Permitted Liens and Assumed Liabilities.

16.    All entities who are presently, or on the Closing Date may be, in possession of

some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased

Assets to the Buyer on the Closing Date.

17.    Under no circumstances shall any holder of an Interest be able to commence,

continue or otherwise pursue or enforce any remedy, claim or cause of action against the Buyer,

other than the Buyer's obligations with respect to the Permitted Liens and Assumed Liabilities.

18.    This Court retains jurisdiction to enforce and implement the terms and provisions

of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder,

and of each of the agreements executed in connection therewith in all respects, including, but not

limited to, retaining jurisdiction to (a) resolve any disputes arising under or related to the Asset

Purchase Agreement, except as otherwise provided therein, and (b) interpret, implement, and

enforce the provisions of this Sale Order.

19.    The terms and provisions of the Asset Purchase Agreement and this Sale Order

shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates,

and their creditors, the Buyer and their respective affiliates, successors and assigns, and any

affected third parties including, but not limited to, all persons asserting Interests in the Purchased

Assets to be sold to the Buyer pursuant to the Asset Purchase Agreement, notwithstanding any

subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which

trustee(s) such terms and provisions likewise shall be binding.

20.     The failure specifically to include any particular provisions of the Asset Purchase

Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

being the intent of the Court that the Asset Purchase Agreement be authorized and approved in

its entirety.

21.     The Asset Purchase Agreement and any related agreements, documents or other

instruments may be modified, amended or supplemented by the parties thereto, in a writing

signed by both parties, and in accordance with the terms thereof, without further order of the

Court, provided that any such modification, amendment or supplement does not have a material

adverse effect on the Debtors' estates.

22.     The Asset Purchase Agreement was negotiated, proposed and entered into by the

LPF and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.

Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the

Asset Purchase Agreement to be avoided under 11 U.S.C. § 363(n).

23.     The Buyer is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, the

Buyer is entitled to all of the protections afforded thereby.  The Buyer will be acting in good

faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the

Asset Purchase Agreement at all times after the entry of this Sale Order.  The Buyer has not

engaged in collusive bidding or otherwise violated the provisions of § 363(n) of the Bankruptcy

Code.

24.     As provided by Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d), this Sale Order shall not be stayed for 10 days after the entry of the Sale Order and shall be effective and enforceable immediately upon entry of this Sale Order.

25.     This sale order is not intended to cause and does not effect a substantive consolidation of the Debtors and all rights of all parties with respect to the issue of substantive consolidation are preserved.

ENTERED:


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

**EXHIBIT E**

**BIDDING PROCEDURES ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **JOHNSON BROADCASTING, INC., et al.,** | : | **Case No. 08-36583** |
| | : | |
| **Debtors.** | : | **Jointly Administered** |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |

## BIDDING PROCEDURES FOR THE AUCTION OF
## CERTAIN ASSETS OF THE DEBTORS

Johnson Broadcasting, Inc. and Johnson Broadcasting of Dallas, Inc., as Debtors and Debtors in Possession (collectively, the "Debtors") and Frank Higney, as Limited Purpose Fiduciary ("LPF") set forth below the following bid procedures (the "Bidding Procedures") to be employed in connection with an auction (the "Auction") for the sale of substantially all of Debtors' assets (the "Station Assets").

### I.      Assets to be Sold

The Auction shall consist of the Station Assets, which are described in the Asset Purchase Agreement (the "Stalking Horse APA") by and among Una Vez Mas Houston, LLC (the "Stalking Horse Bidder") and Frank Higney, in his capacity as Bankruptcy Court-approved Limited Purpose Fiduciary on behalf of the Debtors.

### II.     Confidentiality Agreements

Upon execution of a valid confidentiality agreement, in form and substance satisfactory to the LPF and Debtors, any party that wishes to conduct due diligence on the Station Assets may be granted access to information available that has been or will be provided to the other bidders.

HOU:2916352.1

### III.   Bid Deadline

Any person or entity interested in participating in the Auction must submit a Qualifying Bid (as defined below) on or before _____, 2009 (Central Time) (the "Bid Deadline") in writing, to:

    i.        Counsel to the Debtors:
                Timothy A. Davidson II
                Andrews Kurth LLP
                600 Travis, Suite 4200
                Houston, Texas 77002

    ii.       LPF for the Seller:
                Frank J. Higney
                Kalil & Co., Inc.
                6363 N. Swan Road, Suite 200
                Tucson, AZ  85718

    iii.      Counsel to the Stalking Horse Bidder
                Toby L. Gerber
                 Fulbright & Jaworski LLP
                2200 Ross Ave., Ste. 2800
                Dallas, Texas 75201

    iv.      Counsel to Merrill Lynch Commercial Finance Corp.
                Leslie M. Luttrell
                 Morgan & Luttrell, L.L.P.
                711 Navarro, Suite 210
                San Antonio, Texas 78205

### IV.   Qualifying Bids

In order to participate in the bidding process and be deemed a "Qualifying Bidder," each potential bidder must submit a "Qualifying Bid" by the Bid Deadline.  To constitute a Qualifying Bid, a bid must:

    i.        Be in writing;

    ii.       State that such bidder offers to purchase the Station Assets upon the terms and conditions substantially as set forth in the Stalking Horse APA;

-2-

iii.    State that such bidder is prepared to enter into a legally binding purchase and sale agreement for the acquisition of the Station Assets on terms and conditions no less favorable to the Debtors than the terms and conditions contained in the Stalking Horse APA;

iv.    Include a clean and duly executed Station Assets Purchase Agreement (the "Modified APA") and a "blacklined" comparison against the Stalking Horse APA to show any changes requested by the bidder. All Modified Purchase Agreements must be on substantially the same terms and subject to the same conditions as set forth in the Initial Asset Purchase Agreement;

v.    Provide that such bidder's offer is irrevocable until the closing of the purchase of the Station Assets if such bidder is the Successful Bidder or the Back-Up Bidder (each as defined below);

vi.    State that such bidder is financially capable of consummating the transactions contemplated by the Modified APA;

vii.    Include such financial and other information that will allow the LPF and Debtors to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA;

viii.    Identify with particularity each and every executory contract and unexpired lease that is to be assumed and assigned pursuant to the Modified APA;

ix.    Not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

x.    Fully disclose the identity of each entity that will be bidding for the Station Assets or otherwise participating in connection with such bid and the complete terms of any such participation;

xi.    Not contain any due diligence or financing contingencies of any kind;

xii.    Include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified APA; and

xiii.    Include a cash deposit equal to ten percent (10%) of the amount offered to purchase the Station Assets (the "Good Faith Deposit");

xiv.    Be in an amount at least $800,000 greater than the purchase price set forth in the Stalking Horse APA (*i.e.*, $15,625,000), which amount includes the Stalking Horse Bidder's "Break-Up Fee" of $700,000 and the $100,000 minimum bid increment.

The LPF (following consultation with the Debtors and consideration of their views) shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be Qualifying Bids by no later than 5:00 p.m. (Central Time) on _____, 2009.

## V.    **Auction**

In the event that the LPF and Debtors timely receive one or more Qualifying Bids, in addition to the Stalking Horse bid, which is deemed to be a Qualifying Bid, the LPF and Debtors shall conduct the Auction with respect to the Station Assets.  The Auction will be conducted at _____ on _____, 2009 at _____ (Central Time), or such other location as designated by the LPF and Debtors in a notice to all Qualifying Bidders.  The Auction shall be governed by the following procedures:

i.   The Qualifying Bidders shall appear in person at the Auction or through a duly authorized representative;

ii.   Only representatives of the LPF and Debtors and holders of Qualifying Bids shall be entitled to be present at the Auction;

iii.   Only the Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

iv.   Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

v.   Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction;

vi.   Qualifying Bidders may then submit successive bids in increments of at least $100,000 higher than the previous bid;

vii.   All Qualifying Bidders shall have the right to submit additional bids, subject to clause (vi) above, and make additional modifications to the Stalking Horse APA or Modified APA, as applicable, at the Auction;

viii.   The Auction will be conducted to achieve the maximum value for the Station Assets and may include individual negotiations with the Qualifying Bidders and/or open bidding in the presence of all other Qualifying Bidders; and

ix.   The Auction shall continue until there is only one offer that the LPF and Debtors determine, subject to Court approval, is the highest or best offer from among the Qualifying Bidders submitted at the Auction (the "Successful Bid"). In making this decision, the LPF and Debtors may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualifying Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse APA requested by each Qualifying Bidder, and the net benefit to the Debtors' estates. The Qualifying Bidder, submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the applicable Modified APA.

Within three (3) days after adjournment of the Auction, the LPF, in the exercise of its business judgment, shall make a determination whether to accept or reject a Successful Bid of a Successful Bidder. If a Successful Bid is approved, within three (3) days of approval, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and make and pay for all necessary filings with all applicable governmental or other authorities. Bids made after the close of the Auction shall not be considered by the LPF and Debtors.

In the event that the LPF and Debtors do not timely receive one or more Qualifying Bids, other than the Stalking Horse bid, the LPF and Debtors shall promptly seek the entry of a sale order and otherwise take all steps contemplated in the Stalking Horse APA and otherwise necessary and to receive Bankruptcy Court approval and consummate the sale of the Station Assets to the Stalking Horse Bidder without conducting the Auction (except to the extent the LPF and Debtors pursue the "Finance Alternative" (as defined in the LPF Order)).

## VI.   **Return of Deposit**

Except as otherwise provided herein, Good Faith Deposits shall be returned to each Qualifying Bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) Business Day following the conclusion of the Auction.

HOU:2916352.1

**EXHIBIT F**

**<u>DIGITAL UPGRADE</u>**

# EXHIBIT A

Case 08-36583   Document 363-4   Filed in TXSB on 10/27/09   Page 24 of 30
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 62 of 75
Case 08-36583   Document 285-1   Filed in TXSB on 08/27/09   Page 2 of 4

## Technical Specifications

Richland shall be responsible for completing the build out set forth below (the "KLDT DTV Plan"). Richland shall keep the Debtors' updated regarding the build out set forth below and shall provide access to the facility. The cost for the KLDT DTV Plan to Johnson Broadcasting of Dallas, Inc. shall be a fixed price of $3 million to be funded from the Richland DIP loan.

**Electrical:**

Richland Towers will supply adequate electrical power to operate the transmitter as specified below.

1. UPS System
    a. Providing a no break supply with minimum five minute hold up capacity.
    b. APC-MGE EPS-7000 or equivalent.
    c. 480v input / output rated at 500kvw, 450kw service.
    d. Low KVR input line filter.
    e. External maintenance bypass.
    f. DC service disconnect system on each battery cabinet with remote panel
    g. Remote network and SNMP control capability.
    h. Factory commissioned, load tested and five year maintenance agreement.
2. Richland Services
    a. Electrical installation to the suite.
    b. Transmitter installation including permitting and electrical design.

**Generator:**

Richland Tower will relocate the existing 600kw generator that KLDT owns from the Cedar Hill South Tower to the 1204 West Beltline Road site as well as the automatic transfer system.

1. Generator
    a. Richland will interface the engine and transfer control system to the KLDT Statmon site control system for remote operation and monitoring.
    b. Richland will be responsible for engine commissioning and load testing.
2. Generator Layout
    a. Richland Towers will supply an area to accommodate the generator and under mounted fuel storage that is ice protected.
    b. The pad will be installed with conduits adequate to accommodate supply and control cables between the engine and proposed KLDT Suite.
3. Design/Approval process: Richland will be responsible for the structural design, build approval and required permitting.

**HVAC – Plumbing:**

1. HVAC:
   a. Richland shall relocate the existing HVAC system owned by KLDT to the 1204 West Belt Line Road facility.
   b. To supplement the relocated HVAC system, Richland Towers will provide access and utilization of the existing Richland HVAC system consisting of (2) 20 ton staged units and an auxiliary 10 ton unit.
   c. Upon project completion, KLDT will be responsible for all service and maintenance costs to maintain the system.
2. Plumbing:
   a. Richland Towers will install all associated transmitter cooling equipment and required plumbing.
   b. Richland will supply all material including distilled water, heat transfer solution and glycol to get the new transmitter operational.
   c. Richland will supply a dedicated independent cooling system and storage tank for each amplifier.
   d. Richland will supply a reserve space for glycol and distilled water to be kept on site adequate to refill any of the cooling systems.

**Build Out:**

Richland Towers will supply Johnson Broadcasting a suite consisting of   865sf transmitter room, and either an adjacent 185sf office area or the KXTX-TV Telemundo Aux 375 sf suite, or both, as necessary to fully accomodate a reasonably satisfactory master control area.

1. Suite Design: Richland will work with Johnson engineering for design and placement of all transmitter and RF components.
2. Master Control: Richland will relocate master control to the new transmitter site located at 1204 West Belt Line Road.
3. Equipment Pad: Richland Tower will supply an external equipment pad area that is ice protected and adequate to support all of the KLDT transmitter cooling, power supply and HVAC equipment. There shall be adequate space for the existing satellite antennas and the two new satellite antennas to be purchased and installed by Richland.
4. Richland shall relocate and install the fire system currently located at Cedar Hill South.
5. Richland shall ensure that there is no broadcast outage or downtime during the relocation and build out.

**Microwave:**

Richland Tower will provide all the rigging labor necessary during the CH 5 antenna removal and new antenna replacement to acquire and install needed microwave or ENG equipment.

**Transmission Equipment:**

Richland Towers will supply a transmitter with the following operating requirements. The system must be space planned and water plumbed for an N+1 configuration and full power operation.

1. Transmitter (Visionary MSDC IOT):
   a. Each amplifier (3 total) must have a dedicated stand alone cooling system with, heat exchange, storage tank and water pump.
   b. Richland will provide a redundant exciter system with precision frequency reference and auto change over.
   c. The transmitter control GUI will have remote access and the ability to interface with Statmon site control or have an embedded Statmon control system installed.
   d. Standard factory warrantee and allow for KLDT engineering staff availability to maintenance training. Richland shall obtain at least a 5 year warranty for the transmitter).
2. Transmitter Installation:
   a. Richland will install, commission and proof the transmitter.
   b. Richland will install and integrate the Statmon transmitter and site control management system.

**Passive RF System – Antenna and Line (ERI Trasar or equivalent):**

1. Antenna: Richland purchased antenna mounted at the top of the tower or below as needed by KLDT.
2. Line: Richland Towers will supply an existing 6" transmission line.
3. Auxiliary Antenna: Richland Towers will allow KLDT use of the existing auxiliary antenna as a standby and will provide access from new transmitter output to the standby antenna.

**Johnson Broadcasting, Inc.**
**Pro Froma – DTV Conversion Costs.**
June 2009 – December 2009

| | May-09 | Jun-09 | Jul-09 | Aug-09 | Sep-09 | Oct-09 | Nov-09 | Dec-09 | Total |
|---|---|---|---|---|---|---|---|---|---|
| KNWS DT47 build | | | | 20,000 | 20,000 | 20,000 | | | 60,000 |
| Quantum - Sencore/Myat/Axcera | - | 185,890 | 63,173 | 63,173 | 63,173 | 48,015 | | | 423,424 |
| IT Maintenance / Hardware Upgrades | | 5,000 | 5,000 | 5,000 | 5,000 | 1,000 | | | 21,000 |
| KNWS Transmitter Maintenance | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | | | 12,500 |
| KNWS PSIP Compliance | | | | 50,000 | | | | | 50,000 |
| KNWS Analouge Equipment Removal | | | | 30,000 | | | | | 30,000 |
| HVAC - replacement | | | 45,000 | 45,000 | 10,000 | | | | 100,000 |
| Miscellaneous Supplies/Small tools/Supplies | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | 25,000 |
| **Total Engineering Costs** | - | 198,390 | 120,673 | 220,673 | 105,673 | 76,515 | - | - | 721,924 |

**EXHIBIT G**

**LPF ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
02/26/2009

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| **JOHNSON BROADCASTING, INC. and** | § | Case No. 08-36583 |
| **JOHNSON BROADCASTING OF DALLAS, INC.** | § | |
| | § | Case No. 08-36585 |
| | § | |
| Debtors. | § | Jointly Administered Under |
| | § | Case No. 08-36583 |

<u>**AGREED ORDER APPOINTING LIMITED PURPOSE FIDUCIARY**</u>

CAME ON BEFORE THE COURT on this the 17th day of February, 2009, the Motion Of Merrill Lynch Commercial Finance Corp. For Appointment Of Chapter 11 Trustee [Docket No. 109] (the "Trustee Motion") and the Response thereto filed by Johnson Broadcasting, Inc. and Johnson Broadcasting of Dallas, Inc. [Docket No. 132] (the "Response"). Merrill Lynch Commercial Finance Corp. ("MLCFC") appeared through counsel of record, Johnson Broadcasting, Inc. ("JBI") and Johnson Broadcasting of Dallas, Inc. ("JBD") (collectively the "Debtors") appeared by and through their counsel of record. The parties announced that an agreement had been achieved that resolves the Trustee Motion and the Response as set forth herein.

Upon considering the announcements of MLCFC and the Debtors and reviewing the terms of this Agreed Order, the Court concludes:

1. adequate notice of the Trustee Motion and the opportunity for a hearing have been given;

2. this Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334;

3. this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O);

4. venue is proper in this district pursuant to 28 U.S.C. § 1408;

5. the Court has the power and authority to appoint the Limited Purpose Fiduciary pursuant to 11 U.S.C. §§105 and 1104; and

Case No. 08-36583
Johnson Broadcasting, Inc. & Johnson Broadcasting of Dallas, Inc.
Agreed Order Appointing Limited Purpose Fiduciary

HOU:29040:6.1

Page 1 of 9

Case 08-36583   Document 363-4   Filed in TXSB on 10/27/09   Page 30 of 30
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 68 of 75
Case 08-36583   Document 152   Filed in TXSB on 02/26/09   Page 2 of 9
Case 08-36583   Document 151   Filed in TXSB on 02/25/2009   Page 2 of 9

6       that the appointment of a Limited Purpose Fiduciary, as hereinafter identified and with all of the powers, duties and responsibilities as hereinafter defined, is in the best interests of the JBI estate, the JBD estate, and the creditors of and equity security holders of each estate.

Based upon the foregoing findings of fact and conclusions of law, which are fully incorporated by reference into this Agreed Order as set forth below, it is hereby ordered as follows:

1       <u>Preamble and Findings Incorporated by Reference</u>. The paragraphs contained in the preamble to this Agreed Order and the findings of fact and conclusions of law set forth above are incorporated herein by this reference.

2.       <u>Appointment and Term</u>. Effective as of February 23, 2009, Frank Higney of Kalil & Company shall be and is hereby appointed as the Limited Purpose Fiduciary (hereinafter the "LPF") with all of the rights, powers and duties as delineated in this Agreed Order. The LPF shall serve in such role until the earlier of (i) a Chapter 11 plan effective date, (ii) consummation of a sale of substantially all of the Operating Assets, and/or (iii) further order of the Court, as applicable.

3.       <u>Revocation of Prior Approved Retention</u>. Kalil & Company has been approved by this Court as the Debtors' media broker [Docket No. 42]. Notwithstanding the prior representations by Kalil & Company as Media Broker, the Debtors and MLCFC acknowledge and agree that Frank Higney is well suited and situated to assume the role of LPF. In this regard, Kalil & Company and Frank Higney acknowledge, covenant and agree that the role as media broker under Docket No. 42 is hereby terminated. Frank Higney acknowledges, covenants and agrees that pursuant to the terms of this Agreed order he assumes the role of a fiduciary as set forth herein and he shall act, at all times, in the best interest of the creditors of and equity security holders in the Debtors..