Case 08-36583   Document 363-5   Filed in TXSB on 10/27/09   Page 1 of 13
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 69 of 75
Case 08-36583   Document 152   Filed in TXSB on 02/26/09   Page 3 of 9
Case 08-36583   Document 151   Filed in TXSB on 02/25/2009   Page 3 of 9

4   **Fiduciary Relationship.** The LPF shall be a fiduciary of the creditors of and equity security holders of each estate and shall, at all times, act in the best interests of the creditors of and equity security holders of each estate.

5   **Role of the LPF.** The LPF is appointed for the limited purpose of exercising fiduciary authority over a process to consummate a sale of substantially all of the assets necessary to, associated with, used in or useful to, or otherwise related to the operations of the television station operated by JBI (KNWS-TV, Katy, Texas) and the television station operated by JBD (KLDT-TV, Dallas, Texas) (as further described below, the "Operating Assets"). The LPF shall be vested with full decision-making authority on behalf of each Debtor in connection with any such sale, including, but not limited to, authority to (i) initiate and conduct negotiations with potential buyers, (ii) determine whether a proposed transaction(s) is in the best interests of each estate (based upon the current market and Operating Assets conditions), (iii) determine whether or not to pursue approval and consummation of a proposed transaction(s), (iv) negotiate, agree upon and execute in the name of each Debtor one or more asset purchase agreements and any necessary related or ancillary agreements (including relating to bidding procedures), (v) consummate any sale transaction that has been approved by final order, and (vi) direct the Debtors' other professionals in connection with negotiating, drafting, seeking Court approval and consummating any such sale in accordance with the terms of this Order. In exercising its authority, the LPF shall consider and act in the best interests of the Debtors' estates, creditors and equityholders, and the LPF shall not agree to or seek to consummate any sale that is not in the best interests of the estates, creditors and equityholders.

6.   **Operating Assets.** The Operating Assets shall include, but are not limited to:

a.   any Federal Communications Commission ("FCC") licenses, permits and authorizations;

b.   all equipment at each transmitter site facility;

Case 08-36583   Document 363-5   Filed in TXSB on 10/27/09   Page 2 of 13
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 70 of 75
Case 08-36583   Document 152   Filed in TXSB on 02/26/09   Page 4 of 9
Case 08-36583   Document 151   Filed in TXSB on 02/25/2009   Page 4 of 9

c.  all broadcast tower site leasehold estates and improvements thereon, including, without limitation, generators, antennas and transmission lines;

d   all capital expenditures made to the Stations for the conversion from analog broadcasting to digital broadcasting;

e   all books, files, and records specifically relating to the Operating Assets, including proprietary information, schematics, technical information and engineering data, machinery and equipment, maps, computer discs and tapes, software, rights to use telephone numbers, drawings, blueprints, plans, and processes developed or acquired and used or intended for use exclusively in connection with the Operating Assets, programming information and the FCC required logs, files, and records;

f.  all trade names, trademarks and intellectual property owned by JBI and JBD, respectively;

g.  all warranties associated with the Operating Assets, to the extent transferable;

h.  all right, title and interest in and to all call letters used with respect to the television stations, together with the goodwill associated therewith;

i.  any leases, contracts or legal rights of JBI and/or JBD, including those related to carriage of the television stations on any cable, satellite or similar distribution system;

j.  any and all Nextel digital equipment and rights relating to operation of the equipment relating to the operation of the stations; and

k.  any and all furniture, fixtures and equipment used for the operation and control of the television stations at the studio locations and transmitter sites.

7.  <u>Option 1: Sale Process</u>. Subject to and in accordance with the provisions of this Order, the LPF shall endeavor to negotiate and execute an acceptable "stalking horse"

Case 08-36583   Document 363-5   Filed in TXSB on 10/27/09   Page 3 of 13
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 71 of 75
Case 08-36583   Document 152   Filed in TXSB on 02/26/09   Page 5 of 9
Case 08-36583   Document 151   Filed in TXSB on 02/25/2009   Page 5 of 9

purchase and sale agreement for the sale of substantially all of the Operating Assets (a "Stalking Horse APA"). If a Stalking Horse APA is executed by the LPF, then within ten (10) business days of the execution date the Debtors shall file with the Court (i) a motion to approve bidding/auction procedures, and (ii) a Chapter 11 plan and disclosure statement pursuant to which the Debtors (a) will propose the sale of assets in accordance with the Stalking Horse APA and the requested bidding procedures, and (b) may set forth the Finance Alternative (as defined and described below). Upon such filing, the Court shall establish dates for a disclosure statement hearing and a confirmation hearing in accordance with its usual and customary procedures, unless the Debtors and MLCFC otherwise mutually agree.

      8      Option 2: Finance/Reorganization Alternative. In the event of a Stalking Horse APA, then the Chapter 11 plan required from the Debtors may, at the Debtors' sole option, include a financing/reorganization alternative (which financing/reorganization alternative may be prospective in any or all material respects subject to the deposit requirements set forth herein) to the proposed asset sale. This "Finance Alternative" shall provide for payment in full on the plan of reorganization effective date of all allowed creditor claims, unless alternative treatment is agreed by a creditor. The Debtors shall have the absolute right at the plan confirmation hearing to not pursue the asset sale plan alternative and pursue confirmation of the Finance Alternative if the Debtors are able to show the Court at a hearing to be held at least 10 days prior to the scheduled sale/confirmation hearing that the funding source is sufficient and available to close and fund on the effective date of the Plan as determined, in accordance with industry standards, an amount of cash sufficient to pay in full all allowed creditor claims on the plan effective date (except those claims for which alternative treatment has been agreed by such creditor) plus a reasonable reserve for disputed claims and administrative expenses as necessary. The hearing on the Finance Option as described in this paragraph shall be set contemporaneously with scheduling of the hearing on the disclosure statement and Plan. All parties hereto waive the

Case 08-36583   Document 363-5   Filed in TXSB on 10/27/09   Page 4 of 13
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 72 of 75
Case 08-36583   Document 152   Filed in TXSB on 02/26/09   Page 6 of 9
Case 08-36583   Document 151   Filed in TXSB on 02/25/2009   Page 6 of 9

finality provision of Federal Rule of Bankruptcy Procedure 6004(g). In the absence of a valid and funded Finance Alternative, the Debtors shall seek confirmation of the asset sale plan with a sale of the Operating Assets to the highest and best bidder as selected by the LPF at such sale/confirmation hearing.

9   Compensation of LPF. The LPF shall be compensated upon consummation of a sale of the Operating Assets. The compensation to the LPF, subject to approval of the Bankruptcy Court, shall be 5% of the net cash sales proceeds actually received by the Debtors up to $3,000,000 and 2% of the net cash sale proceeds actually received by the Debtors greater than $3,000,000 plus actual out of pocket expenses, all to be paid at closing of the sale. In the event of the successful exercise by the Debtors of the Finance Option, the LPF shall be authorized to seek approval of the Court for payment of the actual out of pocket expenses incurred by the LPF plus reasonable compensation based upon the actual time expended by the LPF in the furtherance of the sale process. Nothing herein shall preclude the LPF from incorporating expense reimbursement and compensation to the LPF [for approval by the Court under the event of the Debtors' exercise of the Finance Option] in connection with the presentation of the Stalking Horse APA.

10.   Access by LPF. The LPF shall have immediate and unlimited access within normal business hours to the Operating Assets for the purpose investigating, identifying and becoming familiar with the Operating Assets for the purpose of negotiating and implementing a sale of the Operating Assets. The LPF shall be permitted reasonable access to all personnel of JBI and JBD with knowledge of the Operating Assets, including, but not limited to Doug Johnson, Jack Dabbah and Andrew Bicknell.

11.   Duty of Cooperation And Disclosure. To assist the LPF in its role hereunder, all employees of JBI and JBD, including, but not limited to Doug Johnson, Jack Dabbah and Andrew Bicknell, and all professionals employed by JBI and JBD, including but not limited to:

Case 08-36583   Document 363-5   Filed in TXSB on 10/27/09   Page 5 of 13
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 73 of 75
Case 08-36583   Document 152   Filed in TXSB on 02/26/09   Page 7 of 9
Case 08-36583   Document 151   Filed in TXSB on 02/25/2009   Page 7 of 9

  a  Andrews Kurth LLP,

  b  Atropos, Inc., and

  c  Amerifund

(collectively referred to as the "Retained Professionals") are authorized and directed to cooperate with the LPF, including providing the LPF with access to any information relevant to the negotiation and consummation of a sale of the Operating Assets and filing with the Bankruptcy Court of all pleadings and motions necessary to facilitate the consideration by the Bankruptcy Court of the sale of the Operating Assets. The Debtors' providing documents and communications to the LPF shall not constitute a waiver of any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) and likewise the LPF's providing documents and communications to the Debtors shall not constitute a waiver of any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral).

  12. <u>Exculpation of the LPF.</u> The LPF shall be and is hereby relieved of any liability to Douglas Johnson and the Estates of JBI and JBD for any action taken by the LPF in connection with the furtherance of the duties and obligations of the LPF under the terms of this Agreed Order SAVE AND EXCEPT the ACTUAL FRAUD of the LPF. This Agreed Order shall be conclusive evidence of the release of the LPF by Doug Johnson and the Estates of JBI and JBD SAVE AND EXCEPT upon the showing of a prima facie case of the ACTUAL FRAUD of the LPF.

  13. <u>Binding Nature Of Agreed Order</u>. This Agreed Order is binding on the Debtors, the Debtors' principals and the Retained Professionals of the Debtors. Neither the Debtors nor Doug Johnson may object to a sale by the LPF except through the Finance Alternative

Case 08-36583   Document 363-5   Filed in TXSB on 10/27/09   Page 6 of 13
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 74 of 75
Case 08-36583   Document 152   Filed in TXSB on 02/26/09   Page 8 of 9
Case 08-36583   Document 151   Filed in TXSB on 02/25/2009   Page 8 of 9

14. <u>Continuing Role of Doug Johnson</u>. Notwithstanding the appointment of the LPF, Doug Johnson shall remain in his present capacity with JBI and JBD and shall continue to receive the salaries as permitted under the terms of the Final Cash Collateral Order [Docket No. 129].

15. <u>Continuing Role of Retained Professionals</u>. Notwithstanding the appointment of the LPF, all Retained Professionals shall continue to represent the Debtors in the respective capacities in which they have been retained and approved by the Bankruptcy Court.

16. <u>LPF Reporting</u>. The LPF shall be authorized and is hereby directed to provide periodic updates on the status of negotiations between the LPF and prospective third-party purchasers as may be reasonably requested from time to time by MLCFC with copy of such request to the Debtors' counsel.

17. <u>Continuation of Exclusivity Period</u>. Notwithstanding the appointment of the LPF, the exclusive period afforded the Debtors for the filing and solicitation of a plan of reorganization shall remain intact as provided pursuant to the Order Extending Exclusivity [Docket No. 138]. The appointment of the LPF under this Agreed Order shall not be considered or deemed to be a basis for the denial of any further requests for extension of the exclusivity period. For purposes of clarification, the exclusivity period afforded the Debtors has expired as to Merrill Lynch Commercial Finance Corp. as provided in paragraph 30 of the Final Cash Collateral Order [Docket No. 129].

18. The Debtors shall be authorized to file a motion to amend or modify the terms of this Agreed Order in the event MLCFC is no longer a creditor of the Debtors.

19. <u>No Effect On Other Rights</u>. This Agreed Order shall not operate to modify, alter, impair, affect, abrogate, amend, restrict, or nullify any rights of MLCFC or the Debtors under the terms of the Final Cash Collateral Order [Docket No. 129].

Case 08-36583   Document 363-5   Filed in TXSB on 10/27/09   Page 7 of 13
Case 08-36583   Document 349-2   Filed in TXSB on 10/19/09   Page 75 of 75
Case 08-36583   Document 152   Filed in TXSB on 02/26/09   Page 9 of 9
Case 08-36583   Document 151   Filed in TXSB on 02/25/2009   Page 9 of 9

Signed this 26th day of February, 2009.

_____
HONORABLE JEFF BOHM
UNITED STATES BANKRUPTCY JUDGE

AGREED:

/s/ *Tim Davidson w/permission*
Timothy A. Davidson, II
State Bar No. 24012503
John J. Sparacino
State Bar No. 18873700

Counsel for Johnson Broadcasting, Inc. and
Johnson Broadcasting of Dallas, Inc.


/s/ *Leslie M. Luttrell*
Leslie M. Luttrell
State Bar No. 12708650

Counsel for Merrill Lynch Commercial Finance Corp.

**Exhibit B**

HOU:2916352.4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | x | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JOHNSON BROADCASTING, INC., et al., | : | Case No. 08-36583 |
| | : | |
| Debtors. | : | Jointly Administered |
| | x | |

## BIDDING PROCEDURES FOR THE AUCTION OF
## CERTAIN ASSETS OF THE DEBTORS

Johnson Broadcasting, Inc. and Johnson Broadcasting of Dallas, Inc., as Debtors and Debtors in Possession (collectively, the "Debtors") and Frank Higney, as Limited Purpose Fiduciary ("LPF") set forth below the following bid procedures (the "Bidding Procedures") to be employed in connection with an auction (the "Auction") for the sale of substantially all of Debtors' assets (the "Station Assets").

I.    **Assets to be Sold**

The Auction shall consist of the Station Assets, which are described in the Asset Purchase Agreement (the "Stalking Horse APA") by and among Una Vez Mas Houston, LLC (the "Stalking Horse Bidder") and Frank Higney, in his capacity as Bankruptcy Court-approved Limited Purpose Fiduciary on behalf of the Debtors.

II.   **Confidentiality Agreements**

Upon execution of a valid confidentiality agreement, in form and substance satisfactory to the LPF and the Debtors, any party that wishes to conduct due diligence on the Station Assets may be granted access to information available that has been or will be provided to the other bidders.

HOU:2916352.4

### III. Bid Deadline

Any person or entity interested in participating in the Auction must submit a Qualifying Bid on or before a date to be set by the Court consistent with the Timeline for Confirmation of Plan of Reorganization or Sale of Debtors' Assets (the "Timeline") set forth on Exhibit D to the Debtors Motion to Approve Procedures[1] (the "Bid Deadline") in writing, to:

i.  Counsel to the Debtors:
    Timothy A. Davidson II
    Andrews Kurth LLP
    600 Travis, Suite 4200
    Houston, Texas 77002

ii. LPF for the Seller:
    Frank J. Higney
    Kalil & Co., Inc.
    6363 N. Swan Road, Suite 200
    Tucson, Arizona 85718

iii. Counsel to the Stalking Horse Bidder
    Toby L. Gerber
    Fulbright & Jaworski LLP
    2200 Ross Ave., Ste. 2800
    Dallas, Texas 75201

iv. Counsel to Merrill Lynch Commercial Finance Corp.
    Leslie M. Luttrell
    Morgan & Luttrell, L.L.P.
    711 Navarro, Suite 210
    San Antonio, Texas 78205

### IV. Qualifying Bids

In order to participate in the bidding process and be deemed a "Qualifying Bidder," each potential bidder must submit a "Qualifying Bid" by the Bid Deadline. To constitute a Qualifying Bid, a bid must:

i.  Be in writing;

---

[1] Debtors' Motion for an Order (I) Approving the Stalking Horse APA, (II) Approving Bidding Procedures for an Auction of Debtors' Assets, (III) Scheduling the Date for the Auction, (IV) Approving the Proposed Sale Notice, and (V) Setting Certain Dates Related to the Sale of the Station Assets.

-3-

HOU:2916352.4

ii. State that such bidder offers to purchase the Station Assets upon the terms and conditions substantially as set forth in the Stalking Horse APA;

iii. State that such bidder is prepared to enter into a legally binding purchase and sale agreement for the acquisition of the Station Assets on terms and conditions no less favorable to the Debtors than the terms and conditions contained in the Stalking Horse APA;

iv. Include a clean and duly executed Station Assets Purchase Agreement (the "Modified APA") and a "blacklined" comparison against the Stalking Horse APA to show any changes requested by the bidder. All Modified Purchase Agreements must be on substantially the same terms and subject to the same conditions as set forth in the Stalking Horse APA;

v. State that such bidder is financially capable of consummating the transactions contemplated by the Modified APA;

vi. Include such financial and other information that will allow the LPF and the Debtors to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA;

vii. Identify with particularity each and every executory contract and unexpired lease that is to be assumed and assigned pursuant to the Modified APA;

viii. Not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

ix. Fully disclose the identity of each entity that will be bidding for the Station Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

x. Not contain any due diligence or financing contingencies of any kind;

xi. Include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified APA; and

xii. Include a cash deposit equal to ten percent (10%) of the amount offered to purchase the Station Assets (the "Good Faith Deposit");

xiii. Be in an amount at least $800,000 greater than the purchase price set forth in the Stalking Horse APA (*i.e.*, $15,625,000.00), which amount includes the Stalking Horse Bidder's "Break-Up Fee" of $700,000 and the $100,000 minimum bid increment.

-4-

HOU:2916352.4

The LPF (following consultation with the Debtors and consideration of their views) shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be Qualifying Bids by no later than 5:00 p.m. (Central Time) on or before a date to be set by the Court consistent with the Timeline.

V.  **Auction**

In the event that the LPF and the Debtors timely receive one or more Qualifying Bid, in addition to the Stalking Horse bid, which is deemed to be a Qualifying Bid, the LPF and the Debtors shall conduct the Auction with respect to the Station Assets. The Auction will be conducted at the offices of Andrews Kurth LLP, 600 Travis, Suite 4200, Houston, Texas 77002, on or before a date to be set by the Court consistent with the Timeline, or such other location as designated by the LPF and the Debtors in a notice to all Qualifying Bidders. The Auction shall be governed by the following procedures:

i.  The Qualifying Bidders shall appear in person at the Auction or through a duly authorized representative;

ii. Only representatives of the LPF and the Debtors and holders of Qualifying Bids shall be entitled to be present at the Auction;

iii. Only the Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

iv. Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

v.  Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction;

vi. Qualifying Bidders may then submit successive bids in increments of at least $100,000 higher than the previous bid;

vii. All Qualifying Bidders shall have the right to submit additional bids, subject to clause (vi) above, and make additional modifications to the Stalking Horse APA or Modified APA, as applicable, at the Auction;

viii. The Auction will be conducted to achieve the maximum value for the Station Assets and may include individual negotiations with the Qualifying Bidders and/or open bidding in the presence of all other Qualifying Bidders; and

-5-

HOU:2916352.4

    ix.    The Auction shall continue until there is only one offer that the LPF and the Debtors determine, subject to Court approval, is the highest or best offer from among the Qualifying Bidders submitted at the Auction (the "Successful Bid"). In making this decision, the LPF and the Debtors may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualifying Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse APA requested by each Qualifying Bidder, and the net benefit to the Debtors' estates. The Qualifying Bidder, submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the applicable Modified APA.

    Within three (3) days after adjournment of the Auction, the LPF, in the exercise of its business judgment, shall make a determination whether to accept or reject a Successful Bid of a Successful Bidder. If a Successful Bid is approved, within three (3) days of approval, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and make and pay for all necessary filings with all applicable governmental or other authorities. Bids made after the close of the Auction shall not be considered by the LPF and the Debtors.

In the event that the LPF and the Debtors do not timely receive one or more Qualifying Bids, other than the Stalking Horse bid, the LPF and the Debtors shall promptly seek the entry of a sale order and otherwise take all steps contemplated in the Stalking Horse APA and otherwise necessary and to receive Bankruptcy Court approval and consummate the sale of the Station Assets to the Stalking Horse Bidder without conducting the Auction (except to the extent the Debtors pursue the "Finance Alternative" (as defined in the LPF Order)).

## VI.    Return of Good Faith Deposits

Except as otherwise provided herein, Good Faith Deposits shall be returned to each Qualifying Bidder not selected by the Debtors as the Successful Bidder by no later than the fifth (5th) Business Day following the conclusion of the Auction.