IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                    : Chapter 11
                                          :
JOHNSON BROADCASTING, INC., et            : Case No. 08-36583
al.,                                      :
                                          :
                                          : Jointly Administered
            Debtors.                    x
- - - - - - - - - - - - - - - - - - - - - - - - - - -
```

**DEBTORS' MOTION FOR ORDER UNDER 11. U.S.C. §§ 363 AND 105(a) AND FED. R. BANKR. P. 2002, 6005, AND 9006 ESTABLISHING PROCEDURES FOR MISCELLANEOUS ASSET SALES OR ABANDONMENT OF ASSETS**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE UNITED STATES BANKRUPTCY JUDGE:

Johnson Broadcasting, Inc. ("JB") and Johnson Broadcasting of Dallas, Inc. ("JB-Dallas" and collectively, the "Debtors") file this Motion (the "Motion") for Order under 11 U.S.C. §§363 and 105(a) and Fed. R. Bankr. P. 2002, 6005, and 9006 Establishing Procedures for Miscellaneous Asset Sales or Abandonment of Assets and respectfully states as follows:

HOU:2988203.2

## I. JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested is available pursuant to sections 363, 554 and 105(a) of the Bankruptcy Code.

## II. BACKGROUND

2. On October 13, 2008 (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3. Each Debtor continues to operate its business and manage its property as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

4. JB owns and operates KNWS-TV, a commercial UHF television station licensed to Katy, Texas, within the Houston, Texas designated market area ("DMA"). JB built the station and put it on the air in 1993. JB is licensed for analog television service on UHF Channel 51 and digital television service on UHF Channel 52. KNWS-TV has completed its full-power digital broadcast facility build-out and currently broadcasts in both analog and digital formats. KNWS-TV's distribution, including its digital coverage, remains competitive with the three VHF and other UHF stations that are operating at full power in the Houston DMA. KNWS-TV is an independent station.

5. JB-Dallas owns and operates KLDT-DT, a commercial television station licensed to Lake Dallas, Texas, within the Dallas-Fort Worth, Texas DMA. KLDT-DT operates on a digital-only basis, having sold its analog channel to Qualcomm and flash-cut to digital in January

2007. The station broadcasts on full-power digital Channel 54. KLDT-DT is an independent station.

6. JB is wholly-owned by Douglas R. Johnson ("Johnson"). Johnson owns approximately 85% of JB-Dallas and the remaining equity is owned by various of Johnson's family members and the station manager. Johnson is the sole director of each Debtor. On the Petition Date, Johnson also filed a voluntary chapter 11 petition.

7. On February 26, 2009, the Court entered an Agreed Order Appointing Limited Purpose Fiduciary (the "LPF Order") [Docket No. 152], appointing Frank Higney as the limited purpose fiduciary (the "LPF"). Pursuant to the LPF Order, the LPF is empowered with full authority to negotiate a sale of substantially all of the Debtors' assets to a potential purchaser. On December 18, 2009, an auction was conducted at the offices of Andrews Kurth LLP. On December 21, 2009, the Court entered an Order (the "Sale Order") [Docket No. 426] approving the sale of the Debtors assets to Una Vez Mas Houston Holdings, LLC ("UVM"), a Delaware limited liability company, successor-in-interest to Una Vez Mas, LP, the winner of the auction, pursuant to the terms of the Asset Purchase Agreement ("APA") attached to the Sale Order.

8. On January 7, 2010, after notice and hearing, the Court approved the Debtors' First Amended Disclosure Statement. A hearing on confirmation of the Debtors First Amended Joint Plan (the "Plan") has not been set as of the date of filing this Motion.

### III. RELEVANT FACTS

9. While the sale of the Debtors' assets has been approved by the Sale Order, the sale of the Debtors' assets to UVM had not been consummated and closed because the Debtors and UVM are awaiting Federal Communications Commission ("FCC") approval for the transfer of the Debtors' broadcasting licenses. The Debtors anticipate that the sale of JB's assets will

close in the next few months assuming the conditions to closing are satisfied. The closing of the sale of JB-Dallas' assets may take a few months longer than the JB sale, again subject to the conditions to closing being satisfied.

10. Included with the APA was a list of excluded assets which UVM will not be purchasing from the Debtors. These miscellaneous assets (the "Excluded Assets") include, but are not limited to, office furniture, artwork, and miscellaneous office equipment such as printers, computers, and file cabinets. A list of the Assets is attached hereto as **Exhibit "A."** As this is a liquidating chapter 11, the Debtors will no longer require use of theses assets upon confirmation of their Plan.

11. The building in Houston that the Debtors have been renting space in has been sold and the Debtors are relocating to a new location. The Assets are being stored in the building that has been sold. Additionally, there are certain assets that are not essential for operating the business that are not excluded assets under the APA that UVM may not want to purchase even though such assets are acquired assets under the APA (the "Included Nonessential Assets", with the Excluded Assets, the "Assets").[1]

## IV. RELIEF REQUESTED

12. By this Motion, the Debtors request entry of an order establishing certain uniform procedures for the Debtors' contemplated sale of the Assets during the pendency of their chapter 11 cases. Further, the Debtors' request that they be authorized to abandon certain property pursuant to the procedure outlined below.

4

## V. **PROCEDURE REQUESTED**

13.     The Debtors expect that dispositions of the Assets will be necessary and/or desirable during the course of the remainder of these chapter 11 cases. As the Debtors are in a liquidating chapter 11, these Assets will no longer be of use to the Debtors upon confirmation of their Plan.

14.     In light of the potentially significant costs and delays associated with obtaining this Court's approval of each individual sale of an Asset ("Asset Sale"), many of which may be for nominal amounts in light of the nature of the Assets, the Debtors believe that it is neither practical, efficient, nor cost-effective for the Debtors to seek the Court's approval of each Asset Sale on an individual basis. Accordingly, the Debtors respectfully request that the Court dispense with the requirements of notice and a hearing for each Asset Sale and, instead, establish certain uniform procedures by which the Debtors may undertake the Asset Sales. The Debtors believe that these procedures will maximize the likelihood of effective negotiation and consummation of Asset Sales while simultaneously protecting the legitimate interests of the estates' creditors.

15.     Specifically, the Debtors propose that with respect to any Asset Sale with a sale price of greater than or equal to $20,000.00, the Asset Sale be structured in accordance with the following procedures ("Sale Procedures")

>   (a)     As soon as practicable after the Debtors' negotiation of a definitive agreement for an Asset Sale in excess of $20,000.00 the Debtors shall submit to the Notice Parties, a list of which is attached hereto as **Exhibit "B"**, a written description of the relevant terms of the sale (a "Sale Summary"). The Sale Summary shall identify or describe, at a minimum, (A) the purchaser; (B) the Asset(s) to be sold; and (C) the purchase price to be paid.

---

[1]  The Assets are not necessary for the Debtors' operations pending closing the sale with UVM. Additionally, in the event the sale to UVM does not close, the Assets will not be needed for the Debtors to continue to operate.

5

Transactions of $20,000.00 or under shall require no notice, *provided, however*, the Debtors shall always obtain UVM's prior written consent for any Sale of any Included Nonessential Assets and the Debtors shall provided a monthly report of such sales to the Notice Parties.

(b) The Notice Parties shall be permitted three (3) business days (the "Review Period") from the date of the Debtors' submission to review the Sale Summary. If any of the Notice Parties fail to notify the Debtors in writing of their objection to the Asset Sale or a portion thereof prior to the expiration of the Review Period, the Debtors shall be authorized to consummate the Asset Sale without notice and a hearing or entry of a further order of the Court.

(c) If any of the Notice Parties timely object to the Asset Sale described in the Sale Summary, or any portion thereof, but withdraw for any reason the objection of such sale, the Debtors shall be authorized to consummate the Asset Sale without notice and a hearing or entry of a further order of the Court.

(d) If any of the Notice Parties timely object to the Asset Sale described in the Sale Summary, or any portion thereof, and do not withdraw the objection, the Debtors shall have the option of (A) foregoing consummation of the Asset Sale or the portion thereof that is the subject of an objection, (B) modifying the terms of the Asset Sale in a way that results in the Notice Parties withdrawing the objection, or (C) seeking an order of the Court authorizing the Debtors to consummate the Asset Sale over the applicable Notice Party's objection. The Debtors may consummate any portion of a Asset Sale to which no Notice Party has objected.

16. All Asset Sales undertaken pursuant to the forgoing procedures that result in a sale of Assets will be deemed a sale free and clear of any liens, claims, interests, or encumbrances (collectively, "Interests") of any entity in the Assets. Any party asserting and Interest in the Assets will be protected by having such Interest attach to the net proceeds of the sale(s), subject to any claims and defenses the Debtors may possess with respect thereto.

17. The Debtors submit that the establishment of the foregoing procedures is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest in these cases.

HOU:2988203.2

The Assets have little, if any, utility to the Debtors' ongoing operations, and will be of no utility upon confirmation of the Plan or otherwise. Their sale, however, will generate additional value for the Debtors' estates and creditors. Moreover, implementation of the foregoing Sale Procedures will save the Debtors significant human and financial resources, promote judicial economy, and make cost effective these small Asset Sales that otherwise would be prohibitively expensive.

## V. AUTHORITY

18. Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's sale or use of assets outside the ordinary course of business should be approved by this Court if the Debtors can demonstrate a sound business justification for the proposed transaction. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996)(citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

19. Section 363(b)(1) also "confer[s] upon the bankruptcy judge virtually unfettered discretion to authorize the use, sale or lease, other than in the ordinary course of business, of property of the estate." *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983). Further, section 105(a) of the Bankruptcy Code permits this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. 105(a).

20. According to the Fifth Circuit, sales such as those proposed by the Debtors herein may be authorized if the best interest of a debtor's estate is served such that the transaction maximizes or prevents further diminution in value of the estate's assets. *In re Dania Corp.*, 400

7

F.2d 833, 836-37 (5th Cir. 1968), *cert denied,* 393 U.S. 1118 (1969); *see also In re San Jacinto Glass Indus.,* 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988); *In re Continental Air Lines, Inc.,* 780 F.2d. 1223, 1226 (5th Cir. 1986) (stating that "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business").

21.  The Debtors submit that they have good business justification for conducting the Asset Sales in accordance with the procedures outlined above. The Assets provide no ongoing benefit to the Debtors. Upon confirmation of the Debtors' Plan, the Debtors' will no longer be an operating entity, and the Debtors will have no further use for the assets. Further, with each passing day, their value diminishes. Establishing of and adherence to the above Sale Procedures will permit the estates to maximize the value of the Assets by avoiding the cost and delay associated with Court approval of each individual sale.

22.  The proposed sales will not result in any allocation of the sale proceeds. Whatever cash consideration is received from the purchaser of the Asset(s) shall be paid into the Debtors' estates and applied in accordance with the terms of any DIP Financing and/or cash collateral order entered in these cases and otherwise held subject to distribution in accordance with the provisions of the Bankruptcy Code.

23.  Furthermore, the extent that the Debtors are unable to sell an Asset(s) or the Debtors determine that such Asset(s) is not worth the cost associated with undertaking a sale, the Debtors propose that they be authorized to abandon such Asset(s), in the exercise of their reasonable business judgment, as they deem appropriate pursuant to 11 U.S.C § 554. The Debtors would make a determination that the Asset(s) are burdensome to the estate or that they are of inconsequential value and benefit to the estate prior to exercising their business judgment

in abandoning the Asset(s). To the extent the Debtors choose to abandon the asset, they will follow the same Sale Procedures outlined above and provide notice to the Notice Parties under the same conditions. Again, the Debtors shall only abandon Included Nonessential Assets with the prior written consent of UVM.

24. Bankruptcy courts have held that the "after notice and a hearing" language of Section 554 and Bankruptcy Rule 6007 does not require a hearing, rather, it only requires adequate notice. *See In re Heil*, 141 B.R. 112, 114 (Bankr. N.D. Tex. 1992) ("The Code's definition of the phrase 'after notice and a hearing' in § 102(1) authorizes abandonment without an actual hearing provided proper notice is given and no party requests a hearing."); *In re Wildeman*, 84 B.R. 97, 101 (Bankr. W.D. Tex. 1988) ("A hearing need not, therefore, actually be set with respect to such motions, so long as the appropriate parties are afforded due notice and an opportunity for a hearing consistent with Section 102(1) and Bankruptcy Rule 9014."). Accordingly, these Sales Procedures and abandonment procedures are appropriate and should be approved.

WHEREFORE, the Debtors respectfully submit that the Court enter an order (i) establishing procedures for approval and consummation of the Asset Sales, as described herein; (ii) approving the abandonment procedures set forth herein; and (iii) granting the Debtors such other and further relief as may be just and proper.

Dated: January 21, 2010.

                                            Respectfully submitted,

                                      By: /s/ Timothy A. Davidson II
                                            John J. Sparacino
                                            State Bar No. 18873700
                                            Timothy A. Davidson II
                                            State Bar No. 24012503
                                            Andrews Kurth LLP
                                            600 Travis, Suite 4200
                                            Houston, Texas 77002
                                            (713) 220-4200 (Telephone)
                                            (713) 220-4285 (Facsimile)

                                            **COUNSEL FOR THE ABOVE-REFERENCED DEBTORS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via first class regular mail on all of the parties on the attached service list and via ECF notice on those parties set up for ECF notice on January 21, 2010.

/s/ Timothy A. Davidson II
Timothy A. Davidson II

HOU:2988203.2